950 So.2d 872 (2007)
STATE of Louisiana
v.
Rance DUNBAR.
No. 2006-KA-1030.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 2007.
Eddie J. Jordan, Jr., District Attorney, Graham L. Bosworth, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
*873 (Court Composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., and Judge ROLAND L. BELSOME).
MAX N. TOBIAS, JR., Judge.
The defendant, Rance K. Dunbar ("Dunbar"), was charged by bill of information on 4 March 2005 with unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4. He pleaded not guilty at his 8 March 2005 arraignment. The trial court denied Dunbar's motion to suppress the evidence at a 30 March 2005 hearing, at which the court also found probable cause. He was tried by a six-person jury on 19 July 2005, and found guilty as charged. Dunbar pleaded not guilty on 26 July 2005 to a bill of information charging him as a third-felony habitual offender, La. R.S. 15:529.1. He was adjudicated as a third-felony habitual offender on 26 August 2005, and sentenced to twelve years at hard labor. The trial court granted defendant's motion for appeal on 26 August 2005.
New Orleans Police Officer Robert Hurst testified that at approximately 4:25 a.m. on 16 February 2005, he and his partner were sitting in their police unit in the median at South Claiborne Avenue and Octavia Street when he noticed a white Acura automobile traveling eastbound on South Claiborne with its headlights off. Officer Hurst waived to the driver, summoning him over in order to notify him that his headlights were off. Officer Hurst said the windows of the Acura were down. The driver, a dark-skinned black male that Officer Hurst later identified as the defendant, pulled over. A very light-skinned black male was his passenger. As Officer Hurst began to say something to the driver, the driver rapidly accelerated in a northbound direction onto Octavia Street, and the officers pursued him. Officer Hurst's partner determined that the Acura had been reported stolen. Dunbar turned off Octavia Street onto McKenna Street, and both males fled. Dunbar was subsequently apprehended in the area by a canine unit and arrested. Officer Hurst identified a citation he issued to Dunbar for possession of an open alcoholic beverage container (a beer) in a motor vehicle. Officer Hurst testified that the steering column on the Acura had not been defeated.
Officer Brandon Singleton, Officer Hurst's partner on the morning in question, identified Dunbar as having been the driver of the car. Officer Singleton ran a computer check of the Acura, and learned it had been reported stolen the preceding day. Officer Singleton testified that he and his partner set up a perimeter after Dunbar and his passenger abandoned the vehicle, and that backup units arrived within a minute to a minute and a half. The defendant was apprehended shortly thereafter. Officer Singleton confirmed on cross-examination that Dunbar and the other individual were still in the stolen Acura when he and Officer Hurst got to the corner of Octavia and McKenna Streets. Officer Singleton identified a traffic citation summons/affidavit he issued to the defendant, charging him with reckless operation of a motor vehicle, driving with no headlights, and speeding. Officer Singleton confirmed that the "vehicle keys" were in the ignition of the Acura. He also confirmed that when he ran a check of the license plate of the Acura he learned the name of the vehicle's owner. The officer further confirmed that he contacted "her," and "she" confirmed that "her" car had been stolen. Officer Singleton stated that police ask the owners of recovered stolen vehicles whether they wish to have it towed to a secure location or just leave it secured at the location it is recovered. He said they left the Acura at *874 the location it was recovered, implying that the owner requested that it be left there.
Patricia Abrams testified that at approximately 9:00 p.m. on the evening of 15 February 2005, while working at the V.A. Medical Center, she realized she had left her keys in her vehicle. She went outside and discovered that her car, which she had parked in front of the hospital, was missing. She immediately went upstairs and reported it to police. At approximately 5:30 a.m., police contacted her at work about her vehicle. She said she asked them if they could just leave the car on the scene because she could not retrieve it until her shift ended. Ms. Abrams said she did not give the defendant permission to use her vehicle that evening.
Dunbar testified that he worked at a BFI[1] recycling plant. He admitted to having pled guilty in 2002 to accessory after the fact of carjacking, and to having been convicted of unauthorized entry of a business. He said that on the morning in question he was at his home at 2402 Milan Street, talking on the telephone, when he heard a car horn honking outside. He was not expecting anyone. He then heard his doorbell ring. It was an acquaintance, Marvin Robertson ("Robertson"). Robertson told Dunbar that he had some women they could visit. Dunbar got into a car that Robertson told him belonged to his sister. They visited the women somewhere in New Orleans. Robertson was bringing Dunbar home when police signaled for him pull over. Dunbar said Robertson pulled over, but that when the police car began to move, Robertson, who did not have a driver's license, sped off. Robertson stopped the car at some point, and he, Dunbar, ran, in a state of panic. He said he submitted to an officer with a dog and denied ever having driven the car. He replied in the negative when asked whether he saw anything such as a broken steering column or a broken window that would have indicated to him that the vehicle was stolen. Dunbar stated that the keys were in the car, and a purse was on the back seat. He said he did not give the officers Robertson's name because he was not a tattletale. He said police told him that if he was not going to give them the name of the driver, then he was the driver.
ERRORS PATENT
The record contains one error patent. The record does not contain a minute entry reflecting sentencing. However, the record does contain the sentencing transcript. Considering this, and that Dunbar has not assigned any error regarding the absence of the minute entry reflecting sentencing, any error with regard thereto is harmless. See State v. Francois, 00-1039, p. 2 (La.App. 4 Cir. 1/10/01), 778 So.2d 673, 676 (missing minute entry reflecting sentence was harmless error patent where record contained docket master entry reflecting sentencing and defendant did not raise it as assignment of error).
No other errors patent are noted.
ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, Dunbar argues that the evidence is insufficient to support his conviction.[2]
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:

*875 In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
La. R.S. 14:68.4(A) states:
Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.
Dunbar argues that the state failed to prove beyond a reasonable doubt that he either took or used a motor vehicle while knowing its use was unauthorized. He notes that the steering column was intact and the keys were in the ignition. He cites two cases in which the evidence was found to be insufficient to prove the respective defendants committed the offense of unauthorized use of a motor vehicle or unauthorized use of a movable, to-wit: State in Interest of O.B., 559 So.2d 31 (La.App. 4 Cir.1990) and State in Interest of Batiste, 367 So.2d 784 (La.1979).
In O.B., supra, a juvenile defendant was apprehended fleeing from a stolen motor vehicle after it crashed during a police pursuit, O.B., 559 So.2d at 33 The defendant testified that he was on his way to catch a bus in Harvey, Louisiana, back to the Eastbank of New Orleans, when an acquaintance offered him a ride. Id. The driver told the defendant that he was going to return the vehicle to his cousin on the Eastbank. The defendant testified *876 that he observed a set of keys in the ignition, and did not see a broken steering column. Id. The steering column had been broken into, but the owner of the vehicle testified that neither the broken steering column nor pieces of it on the floor beneath the driver would have been visible to a rear seat passenger. Id. This court held that aside from the inference that could be drawn from the defendant's presence in the stolen vehicle, the state had presented insufficient evidence to prove that the defendant took or used the vehicle with the knowledge that it was stolen. Id.
In Batiste, supra, the Louisiana Supreme Court found that the evidence was insufficient to support a defendant's delinquent adjudication for unauthorized use of a movable, the elements of which are identical to those of the offense at issue in the instant case, except that the object in one is a movable, and a motor vehicle in the other. Batiste, 367 So.2d at 789. Police apprehended the defendant in possession of a stolen bicycle. Batiste, 367 So.2d at 785. The defense stipulated that the bicycle had been taken from its owner and was found in the defendant's possession. A friend of the defendant's testified that he loaned, and later gave, the bicycle to the defendant. The friend further testified that the bicycle had been given to him by a third individual. That third individual did not testify at trial. The Louisiana Supreme Court held that aside from the inference which could possibly be drawn from the defendant's possession, no evidence existed tending to prove that he "took or misappropriated" the bicycle. However, the decision is called into question because, contrary to what the Louisiana Supreme Court stated in its analysis, unauthorized use of movable, La. R.S. 14:68, does not require a "misappropriation or taking." Batiste, 367 So.2d at 789. ("[B]oth theft and unauthorized use of movables require a misappropriation or taking by the culprit."). Just as with the instant offense of unauthorized use of a motor vehicle, which was enacted in 1995, unauthorized use of a movable requires a "taking or use." Misappropriation is not an element of either offense. The element of a "taking or use" for unauthorized use of a movable has remained unchanged since at least 1942, when the prohibition was enacted as Article 68 along with then "new" Louisiana Criminal Code by Acts 1942, No. 43, § 1.
In State in Interest of H.N., 97-0982 (La.App. 4 Cir. 7/8/98), 717 So.2d 666, police apprehended three juveniles who fled from a stolen Mazda RX7 after it crashed during a police pursuit. The three had been passengers in the vehicle. Police found no key in the ignition or damage to the vehicle's steering column. The owner testified that his 1986 Mazda RX7 was stolen earlier the same day as the three defendants were arrested. It had been locked, and he had not given anyone permission to use it. One juvenile, H.N., testified that he and his two friends were walking when a person in a Mazda RX7 whom he knew offered them a ride. H.N. said he did not know the car was stolen  that a key was in the ignition, the steering column was intact, and there was no broken glass. The driver jumped out while the car was still moving and told the juveniles to run because the car was stolen. H.N. said he panicked and ran. A second juvenile, T.B., testified that he did not know the car was stolen because nothing was broken and there was a key in the ignition. The third juvenile, L.C., testified that he did not know the car was stolen. Relying on its prior decision in O.B., supra, this court held that the state failed to prove beyond reasonable doubt the elements of unauthorized use of a movable.
In State v. Stevenson, 02-1152 (La.App. 4 Cir. 1/22/03), 839 So.2d 203, the defendant *877 was stopped while driving a rental car that had been reported stolen. The vehicle's steering column was intact, the key was in the ignition, and none of the vehicle's windows was broken. This court said the case presented an even stronger case for reversal than had its decision in H.N., supra, because, unlike in H.N., there was no attempt by the defendant to elude police by fleeing, and the occupants cooperated with police. This court also noted that there was nothing to indicate that any of the occupants knew that the car had been stolen. The court held that the evidence failed to establish that the defendant took or used the vehicle with the knowledge that it was stolen. In reaching its decision in Stevenson, this court distinguished its decision in State v. Jefferson, 97-2949 (La.App. 4 Cir. 4/21/99), 735 So.2d 769, in which the court affirmed the conviction of Stevenson's codefendant, Jefferson, on the ground that Jefferson had given a statement to police that she had obtained the vehicle from a woman, but that she did not know the woman's last name, address, or telephone number. The Stevenson court quoted language from Jefferson that a trier of fact could have concluded that such a story was suspicious and indicative of criminal knowledge and/or intent. This court had also stated in Jefferson that Jefferson knew or should have known that the vehicle did not belong to the woman who allegedly lent her the vehicle, because the rental agreement in the vehicle was in the name of another person.
In neither O.B., supra, nor H.N., supra, did this court cite or discuss the general rule that flight is a circumstance from which guilt can be inferred. State v. Plaisance, 00-1858, p. 16 (La.App. 4 Cir. 3/6/02), 811 So.2d 1172, 1186; State v. Smith, 98-2645, p. 5 (La.App. 4 Cir. 1/26/00), 752 So.2d 314, 317-318. See also State v. Monette, 99-1870, p. 5 (La.App. 4 Cir. 3/22/00), 758 So.2d 362, 365 (flight is a factor evidencing guilty knowledge). However, flight from police officers alone cannot be sufficient to prove guilt, given that flight alone is insufficient to justify an investigatory stop based on reasonable suspicion. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Belton, 441 So.2d 1195, 1198 (La.1983); State v. Briley, 01-0143, p. 6 (La.App. 4 Cir. 10/3/01), 798 So.2d 1191, 1195.
In the instant case, on the issue of Dunbar's knowledge that the vehicle belonged to another and was being used or had been taken either without the owner's consent, or by means of fraudulent conduct, practices or representations, the defendant's flight from police was a circumstance indicating guilty knowledge. While it can be noted that after his apprehension Dunbar was issued a citation for having an open alcoholic beverage container in his vehicle, it is highly unlikely that he fled from police because he knew this was illegal and did not want to receive a municipal summons for that infraction.
As discussed, the "vehicle keys" were in the Acura's ignition, the steering column was intact and had not been defeated, and there was no evidence that any windows were broken. Nor was there evidence of any other indication that entry into the vehicle had been forced.
However, Dunbar testified that he was only a passenger in the vehicle. That testimony was directly contradicted by the testimony of both Officer Hurst and Officer Singleton, who said Dunbar was the driver. Officer Singleton testified that Dunbar pulled the Acura abreast of the police unit, about a foot away, and that he was eight feet away from the defendant  the distance from his passenger position inside the police unit. Thus, Officer Hurst, in the driver's seat of the police unit, was even closer to the defendant than *878 eight feet. The trier of fact could have found that Dunbar lied, and considered that factor indicative of criminal knowledge and/or intent, just as this court hypothesized in affirming the defendant's conviction for unauthorized use of a movable in Jefferson, supra.
Thus, in the instant case, unlike in O.B., supra, H.N., supra, and Stevenson, supra, the trier of fact had two factors upon which to base a finding of guilty knowledge and/or intent  flight, and the defendant's false testimony. Therefore, the instant case is distinguishable from those cases.
Another problem with the sufficiency of the evidence in the instant case is that the state presented no direct or compelling circumstantial evidence that the vehicle Dunbar was driving belonged to Patricia Abrams, the owner of the vehicle  as charged in the bill of information. The only testimony by either of the police officers as to the owner of the vehicle was Officer Singleton's testimony that he learned the name of the vehicle's owner when he ran a check of the license plate of the Acura. However, the officer never stated the owner's name. He confirmed that he contacted "her," and that "she" confirmed that "her" car had been stolen, thus evidencing that the owner was a female. Officer Singleton also stated that police asked the owners of recovered stolen vehicles whether they wish to have their respective vehicles towed to secure locations or have police just leave them secured at the locations at which they are recovered. He said in the instant case they left the Acura at the location where it was recovered. Officer Singleton also testified that the white Acura had been reported stolen "the day before," meaning February 15, 2005. Ms. Abrams never testified to any descriptive quality  make, model, color, style, etc.  of the vehicle she left parked in front of the V.A. Medical Center with the keys in the ignition. She testified that she discovered it missing at approximately 9:00 p.m. on the evening of 15 February 2005, the night before the defendant was seen driving it. She reported it to police that night. She also testified that at approximately 5:30 a.m. on the following day, police contacted her at work about her vehicle. She asked them to leave the car on the scene because she could not retrieve it until her shift ended. Ms. Abrams also testified that she did not give the defendant permission to use her vehicle that evening.
The only evidence upon which the jury could base an inference that the vehicle Dunbar was driving belonged to Patricia Abrams was that: (1) her vehicle was taken by someone without her authority on 15 February 2005, the same day the Acura the defendant was driving was reported stolen; (2) Officer Singleton contacted the female owner of the stolen Acura at some point after approximately 4:25 a.m. on 16 February 2005, notified her that her vehicle had been recovered, and was advised by the female owner that she wanted the Acura left at the scene  which is consistent with Ms. Abrams receiving a call from police at 5:30 a.m. on 16 February 2006, notifying her that her vehicle was recovered; she in turn advised the police caller that she wanted her vehicle left at the scene; and (3) she left the keys in her car, and the Acura being driven by the defendant had the "vehicle keys" in the ignition when police recovered it.
Viewing all of the evidence in a light most favorable to the prosecution, it does not appear and we do not find that any rational trier of fact could have concluded beyond a reasonable doubt that Dunbar took or used a motor vehicle belonging to Patricia Abrams, thus rendering moot the issue of guilty knowledge and/or intent.
*879 We find this assignment of error has merit.
In light of the foregoing, we pretermit a discussion of the two remaining assignments of error, to-wit: (1) the trial court erred in denying Dunbar's motion to quash the habitual offender bill of information and (2) that his twelve-year sentence at hard labor as a third-felony habitual offender is unconstitutionally excessive.
CONCLUSION
For the reasons assigned in addressing Assignment of Error No. 1, we find that the evidence was insufficient to sustain Dunbar's conviction, and therefore reverse his conviction and sentence.
CONVICTION AND SENTENCE REVERSED.
NOTES
[1] Browning Ferris Industries.
[2] When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55; State v. Hearold, 603 So.2d 731, 734 (La.1992).