978 So.2d 899 (2008)
STATE of Louisiana
v.
Rance DUNBAR.
No. 2007-K-0219.
Supreme Court of Louisiana.
February 26, 2008.
*900 James D. Caldwell, Attorney General, Keva Landrum-Johnson, Acting District Attorney, Graham L. Bosworth, Assistant District Attorney, for Applicant.
Sherry Watters, Louisiana Appellant Project, New Orleans, for Respondent.
PER CURIAM.
The state charged defendant by bill of information with unauthorized use of a motor vehicle in violation of La. R.S. 14:68.4. A six-person jury found him guilty as charged. The trial court subsequently adjudicated defendant a third felony offender for purposes of La. R.S. 15:529.1 and sentenced him to 12 years imprisonment at hard labor. On appeal, the Fourth Circuit reversed defendant's conviction and sentence, finding that the state failed to prove beyond a reasonable doubt that the vehicle subject to the unauthorized use belonged to the person specifically named in the bill of information charging the offense. State v. Dunbar, 06-0130 (La.App. 4th Cir.1/10/07), 950 So.2d 872. We granted the state's application to consider the correctness of that decision and now reverse.
The evidence at trial revealed that at approximately 4:25 a.m. on February 16, 2005, New Orleans Police Officers Hurst and Singleton, conducting a routine patrol, sat in their unit parked in the median on Claiborne Avenue at State Street. The officers noticed a white Acura traveling on Claiborne with its headlights off. The vehicle was occupied by two men, and its windows were down despite the cold. Officer Hurst waved to the driver as a signal to pull over. Hurst intended only to caution the driver that his lights were off and not to cite him with any traffic violation. However, when the Acura pulled abreast of the officers, the occupants gave the officers a startled look and the driver gunned the car, turning from Claiborne onto Octavia Street. The officers gave chase as Singleton ran the Acura's plate number through his computer and determined that the vehicle had been reported stolen on the preceding day. The Acura *901 turned from Octavia onto McKenna Street with the officers in close pursuit. The vehicle then stopped in the middle of McKenna, and the driver and his passenger bolted from the car, its engine still running, crossing in front of it as they fled in different directions into the neighborhood. With the assistance of a canine unit, back-up officers called to the scene found defendant in the area and placed him under arrest.
Both Hurst and Singleton positively identified defendant as the driver of the car. According to both officers, they too had their windows rolled down despite the cold weather, and they had an unobstructed view of the Acura's driver from only a few feet away when the vehicle pulled abreast of their patrol unit. Although the car had been reported stolen, the officers acknowledged that keys were in the ignition, the steering column did not appear to have been defeated, and the vehicle otherwise showed no sighs of forced entry. Officer Singleton testified at trial that he had learned the name of the owner, whom he did not identify, when he ran the Acura's plate number through his computer. Following defendant's arrest, he contacted the owner who confirmed that her car had been stolen the day before. Officer Singleton testified that police routinely ask the owners of recovered stolen vehicles whether they wish to have the car towed to a secure location or leave it secured at the location where it was recovered. In the present case, Officer Singleton stated that he left the Acura at the location where the police had recovered it.
Patricia Abrams testified that at approximately 9:00 p.m. on the evening of February 15, 2005, while working at the V.A. Medical Center in New Orleans, she realized that she had left her keys in her car which she had parked outside of the hospital. She went outside to recover her keys and discovered that her vehicle had been stolen. She immediately went back inside and called the police. At approximately 5:30 a.m., police contacted her at work about her vehicle. Abrams testified that she told the officers to leave the car at the scene because she could not retrieve it until her shift ended. She did not identify the officer who called her by name and did not identify or otherwise describe her vehicle.
Defendant took the stand and testified that on the night of February 15, 2005, he was at home when his friend, Marvin Robertson, arrived and told him that he had some women that they could visit. Defendant walked outside and climbed into the passenger seat of a white Acura, which Robertson explained belonged to his sister. After visiting the women, Robertson was driving defendant home when he saw Officer Hurst's signal for him to pull over. Instead, Robertson, who did not have a driver's license, panicked and sped away as defendant urged him to stop. Robertson eventually abandoned the vehicle in the middle of McKenna Street and defendant, panicked by his friend's response, joined in the flight from the scene on foot. Defendant eventually surrendered to the canine unit. Defendant flatly denied that he had been driving the car and testified that he did not see anything such as a broken steering column or broken window that would have indicated to him that the car was stolen. According to defendant, the keys were in the ignition and a purse was on the back seat. Defendant stated that he did not give Robertson's name to the police because he would not inform on a friend. He further claimed that the police told him that if he refused to name the driver, they would identify him as the individual driving the vehicle. Defendant admitted that he had two prior felony convictions for accessory after the fact to car-jacking *902 and for unauthorized entry of a business.
In reversing defendant's conviction and sentence, the court of appeal acknowledged that defendant's flight from the officers and apparent false testimony in direct contradiction of Hurst and Singleton that he was not the driver of the car provided jurors with two factors to consider in assessing whether defendant had guilty knowledge that the Acura was stolen. Dunbar, 06-1030 at p. 10-11, 950 So.2d at 877-78. With respect to defendant's flight from the scene, the court of appeal thought it unlikely that an open beer can found by Officer Hurst in the Acura prompted defendant to run "from police because he knew this was illegal and did not want to receive a municipal summons for that infraction." Id., 06-1030 at p. 10, 950 So.2d at 877.
However, the court of appeal stopped short of stating explicitly that a rational trier of fact could have found guilty knowledge beyond a reasonable doubt because it viewed as a fatal flaw in the state's case its failure to present any "direct or compelling circumstantial evidence that the vehicle Dunbar was driving belonged to Patricia Abrams, the owner of the vehicle  as charged in the bill of information." Dunbar, 06-1030 at p. 11, 950 So.2d at 878. Given the state's apparent failure to tie its case together by eliciting any direct evidence that the Acura belonged to Abrams, the court of appeal concluded that the evidence presented at trial would not have satisfied a rational trier of fact "beyond a reasonable doubt that Dunbar took or used a motor vehicle belonging to Patricia Abrams, thus rendering moot the issue of guilty knowledge and/or intent." Dunbar, 06-1030 at p. 12, 950 So.2d at 878.
In reaching that conclusion, the court of appeal addressed a question not raised by the defense at trial. From the brief portions of closing argument included in the record on appeal, it appears that defense counsel principally attacked the credibility of Officers Hurst and Singleton on the basis of discrepancies in their testimony describing the chase of the Acura, suggesting that the inconsistencies discredited their testimony altogether, including their claim that defendant was driving the car. Counsel also touted the credibility of defendant's testimony, despite his prior felony record which placed his general credibility at issue as a matter of La.C.E. art. 609.1, that he was a passenger in the car driven by Robertson and therefore did not take or "use" the vehicle for purposes of La.R.S. 14:68.4, which defines the offense of unauthorized use of a motor vehicle as "the intentional taking or use of a motor vehicle which belongs to another . . . without the other's consent. . . ." In his brief to the court of appeal, defendant argued that the jury acted unreasonably in rejecting the defense actually offered at trial but made no claim with respect to the question of whether the state proved the Acura belonged to Abrams.
An appellate court may reverse a defendant's conviction and sentence on grounds of insufficient evidence "regardless of how the error is brought to the attention of the reviewing court." State v. Raymo, 419 So.2d 858, 861 (La.1982). However, in the present case, the court of appeal answered only part of the relevant question when it addressed what it saw as the state's critical and inexplicable failure to prove the identity of the particular person who owned the Acura. Even assuming that the state failed to prove that the Acura belonged to Abrams, the question remained whether the state had thereby also failed to prove that the vehicle "belonged to another" for purposes of La. R.S. 14:68.4.
*903 Although the bill of information charged defendant with the unauthorized use of a motor vehicle, "to wit: Acura Integra belonging to Patricia Abrams," the specific allegation with respect to the identity of the owner was unnecessary to charge the offense. The state had no need to allege or prove that the vehicle recovered by the police belonged to any particular person, as opposed to "another," i.e., "any other person or legal entity." La. R.S. 14:2(1). Louisiana has long subscribed to the rule that identification of the victim is an essential averment of an indictment, and an essential element of proof at trial, only for crimes committed against the person, as opposed to crimes against property. La.C.Cr.P. art. 473 thus provides that "[w]hen the name of the person injured is substantial and not merely descriptive, such as when the injury is to the person, as in murder, rape, or battery, the indictment shall state the true name of the victim or the name, appellation, or nickname by which he is known." This article carries forward the provisions of La. C.Cr.P. art. 230 (1928) with respect to charging crimes against the person, and "[t]his situation should be distinguished from crimes against the property where the important fact is the nature and description of property damaged." La. C.Cr.P. art. 473, Official Revision Comment (a). Thus, the short form indictments for charging the analogous crimes of theft and unauthorized use of a movable do not require identification of the person to whom the property belonged before the taking, as opposed to description of the property taken. See La.C.Cr.P. art. 465(A)(44)(theft: "A.B. committed theft of ____ (state property stolen) of a value of ____ dollars."); La.C.Cr.P. art. 465(A)(46)(unauthorized use of movables: "A.B. committed unauthorized use of ____ (describe the movable)."); see also former La.C.Cr.P. art. 235 (1928)(short form for Larceny-Embezzlement and False Pretenses: "A.B. stole or embezzled or obtained by false pretenses (as the case may be. . . . . (describe property stolen, embezzled or obtained by false pretenses, and state value of property.").
These charging forms reflect a longstanding rule, now over a century old in Louisiana, that "[t]he ownership of a particular person is not an essential ingredient of the crime of larceny, which is simply the felonious[ ] taking and carrying away the personal goods of another; and, even if the owner be unknown, the offense may be properly charged and sustained. . . . The identity of [the property] charged to have been stolen is the important thing in determining whether the offense proved is the offense charged." State v. Hanks, 39 La. Ann. 234, 1 So. 458, 459 (1887). Thus, in crimes against property, it is essential only "that it should be alleged and proven to have been the property of another than the accused." State v. Harris, 42 La.Ann. 980, 8 So. 530 (1890); see also State v. Miller, 170 La. 51, 127 So. 361, 362 (1930)(same); State v. Babineaux, 146 La. 290, 83 So. 558, 559 (1919)(same).
The crime of unauthorized use of a motor vehicle as defined in La. R.S. 14:68.4 is similarly an offense against property, and it therefore appears that the description of the vehicle taken or used, and not the identification of a particular person to whom the vehicle belonged, is essential to charging and proving the crime. Thus, even assuming that in the present case the state failed to introduce sufficient evidence that the vehicle recovered by Officers Hurst and Singleton in fact belonged to Patricia Abrams, testimony that the officers determined that the vehicle had been reported stolen on the night of February 15, 2005, that they identified the owner through vehicle registration *904 records, and that Officer Singleton subsequently spoke to the owner on the following morning, who confirmed the theft and directed them as to the disposition of her property, provided jurors with a rational basis for concluding that the Acura belonged to another person and not to defendant or his companion. Although Officer Singleton's testimony had hearsay aspects, review of the sufficiency of the evidence takes into account the entirety of the evidence introduced at trial, including evidence that may have been erroneously admitted. State v. Hearold, 603 So.2d 731, 734 (La.1992); see Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).
In addition, as the court of appeal indicated, the evidence also provided jurors a rational basis for finding that by driving the vehicle and then abandoning it with the engine still running in the middle of the street as Officers Hurst and Singleton closed in pursuit, defendant used the Acura with guilty knowledge that it belonged to another person who had not authorized him to take possession of her vehicle.
Accordingly, the decision of the court of appeal is reversed and this case is remanded for consideration of the defendant's remaining assignments of error pretermitted on original appeal.
DECISION OF COURT OF APPEAL REVERSED; CASE REMANDED.