PAUL A. BONIN, Judge.
11The juvenile-court judge adjudicated T.M., a child, delinquent for a first-offense possession of a handgun, a violation of La. R.S. 14:95.8, and for unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4.[1] T.M. appeals both delinquency adjudications and argues on appeal that the evidence as to both is insufficient to support a finding beyond a reasonable doubt that he violated the statutes.
Upon our review of the entire record, we find that the juvenile-court judge was clearly wrong in finding beyond a reasonable doubt that the State proved that T.M. possessed a handgun on his ■person, an essential element of the offense. We also find that the juvenile-court judge was clearly wrong in finding beyond a reasonable doubt that the vehicle as described in the petition is the one identified in the evidence as being used by T.M. without authorization. Because we find that the State failed to carry its burden of proof on one essential element of each of the |2offenses charged, we reverse the adjudications of T.M., we dismiss the proceedings with prejudice, and we order his discharge from custody.[2]
*1231 In the following Parts we explain in greater details our holdings.
I
At the outset we address the State’s burden of proof in a juvenile-adjudication proceeding and the standard by which we review an adjudication.
A
In a juvenile-adjudication proceeding, the State must prove the child delinquent beyond a reasonable doubt in an adjudication proceeding. In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This standard for the State’s burden of proof in a juvenile delinquency proceeding is “no less strenuous than the proof standard required in a criminal proceeding against an adult.” State in the Interest of A.G. and R.N., 630 So.2d 909, 910 (La.App. 4 Cir. 12/30/93). This burden of proof stems from the application of the Fourteenth Amendment’s Due Process clause which requires the application of the “essentials of due process and fair treatment” during the adjudication hearing. In re Winship, supra at 359, 90 S.Ct. 1068 Importantly, the State must prove |abeyond a reasonable doubt each and every element of the offense. Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). And, of course, by statute, T.M. enjoys the same protection: “in order to adjudicate a child a delinquent, the State must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition.” La. Ch.C. art. 883.
A child who is the subject of a delinquency adjudication proceeding enjoys Due Process safeguards. See In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). “All rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana, except the right to trial by jury, shall be applicable in juvenile court proceedings brought under this title.” La. Ch.C. art. 808. This includes, of course, the opportunity to confront and cross-examine his accusers, have adequate safeguards against self-incrimination, and protection against erroneously admitted hearsay testimony. See In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); La. Ch.C. art. 808.
B
While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless civil in nature. State in the Interest of D.R., 2010-0405, p. 5 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 930. Consequently, under La. Cont. art. V, § 10(B), the appellate court must review both the law and facts when the court reviews juvenile adjudications. A factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. See State in the Interest of Batiste, 367 So.2d 784 (La.1979).
We apply the “clearly wrong-manifest error” standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt. State in the Interest of D.R., 10-0405, p. 9 (La.App. 4 Cir.10/13/10), 50 So.3d 927, 932. This “clearly wrong” standard is broader than the constitutional minimum standard of re *1232 view granted by Jackson v. Virginia. This minimal standard of review provided by Jackson must be satisfied for either an adult conviction or a juvenile adjudication in order to fulfill the Due Process requirement of the Fourteenth Amendment. Id., p. 14, 50 So.3d at 935-36. “[A] juvenile adjudicated a delinquent would be entitled to a Jackson v. Virginia review but for Louisiana’s provision that a less deferential, or a broader, standard is available to the juvenile.” Id., p. 13, 50 So.3d at 934. So, this standard of review as seen in Batiste, entitles a child adjudicated a delinquent in Louisiana to a “broader scope and standard of review than the minimum required by the Due Process Clause.” Id., 10-0405, 50 So.3d at 935.
The Jackson standard of review requires a review of the facts tilted in favor of the prosecution. Jackson v. Virginia, 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In State ex rel. D.M., we stated that “all facts which may have been theoretically proved by the prosecution are accepted; the review is not limited to those facts which the fact-finder actually found, perhaps discarding or disregarding some but not all prosecutorial “facts” or prosecutorial inferences.” State ex rel. D.M., 11-00462, p. 12 (La.App. 4 Cir. 11/02/11), 80 So.3d 18.
Additionally, the Jackson v. Virginia review requires only that any rational trier of fact be convinced beyond a reasonable doubt, but the Batiste standard looks to “this particular trier of fact and whether his or her decision that there was proof beyond a reasonable doubt is not clearly wrong and is reasonable.” Id., p. 13, 80 So.3d 18. Even though the use of this Batiste standard provides a broader scope of review than Jackson v. Virginia, the Batiste standard “remains highly deferential to the function and findings of the trier of fact, the juvenile judge.” Id., p. 13, 80 So.3d 18.
IfiThus, in performing our review function in a juvenile-adjudication proceeding, we must determine whether the trial judge’s factual findings as to whether each and every essential element of the offense charged has been proved beyond a reasonable doubt are reasonable and not clearly wrong. If the findings as to any one essential element are unreasonable and clearly wrong, we must conclude that the evidence is insufficient to sustain the adjudication of the child delinquent.[3]
Ill
In this Part we consider the essential elements of the offense of a juvenile in illegal possession of a handgun on his person and then consider the facts supported by the record.
A
“It is unlawful for any person who has not attained the age of seventeen years knowingly to possess a handgun on *1233 his person. Any person possessing any handgun in violation of this Section commits the offense of illegal possession of handgun by a juvenile.” La. R.S. 14:95.8 A (emphasis added).
“The articles of this [Criminal[4]] Code cannot be extended by analogy so as to create crimes not provided for herein.” La. R.S. 14:3. And all of the Criminal Code’s provisions “shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.” Id. Moreover, where the |fiwords of a statute are clear and free from ambiguity, they are to be applied as written. See La. R.S. 1:4; State v. Watts, 2009-0912, p. 13 (La.App. 4 Cir. 6/16/10), 41 So.3d 625, 635.
We have previously addressed this issue in our unpublished decision in State in the Interest of T.S., 2007-0255 (La.App. 4 Cir. 9/7/07)(unpub.), where we analyzed actual possession “on the person” of the child, an essential element to this offense. There, the officer testified that he pulled a vehicle over and ordered T.S. to exit. Id. at p. 2. As T.S. exited the vehicle, he kicked a gun that was on the floorboard into the officer’s line of sight. Id. We reversed the adjudication of delinquency on the charge of illegal possession of a handgun by a juvenile, finding that the evidence was insufficient to sustain the adjudication as the officer did not find the gun on the person of T.S. as required by the statute. Id. at p. 5. There we effectively rejected the notion that § 95.8 A could be violated by a child’s constructive possession of a handgun.
The distinction may be well-drawn by contrasting two distinguishable provisions of La. R.S. 14:95. Both provisions criminalize carrying of weapons. One provision prohibits “[t]he intentional concealment of any firearm ... on one’s person.” La. R.S. 14:95 A(l). The other provision prohibits an offender from using, possessing, or having “under his immediate control” a dangerous weapon while in possession of or during the sale or distribution of a controlled dangerous substance. La. R.S. 14:95 E.
The first provision, the intentional concealment, has for a long time been restricted to actual possession on the person. Even when the statute provided a 17seemingly slightly broader formulation (“concealed on or about his person”), the Louisiana Supreme Court found that concealing a pistol inside the left front door of the defendant’s automobile, immediately beside the seat he was occupying and within his easy reach was insufficient to prove the charge. State v. Brunson, 162 La. 902, 111 So. 321 (1927).[5] Chief Justice O’Neill wrote that the words “on” and “about” “are interchangeable or synonymous terms.” Brunson, 162 La. at 906, 111 So. at 323. He explained that “[w]hen it is *1234 said in ordinary parlance that a person had a document or a sum of money or a weapon on or about his person, we never think of analyzing the expression, or wonder whether the document, money or weapon, was really on the person or only in close proximity to or in easy reach of the person.” Id. The Chief Justice advised that “[a] safe rule of interpretation of statutes is to give to commonplace terms their most usual and ordinary meaning.” Id. And, he emphasized, that “the safest of all rules, in the construing of criminal statutes of doubtful meaning, is to resolve the ambiguity into the milder construction, in favor of the party accused.” Id.
But the carrying of a knapsack, whether suspended from the shoulder or in the hand, which contains a concealed weapon is “on or about his person.” State v. Jones, 168 La. 55, 121 So. 300 (1929); see also State v. Fluker, 311 So.2d 863 (La.1975) (involving a pistol holster attached to the defendant’s belt on his right hip). More up-to-date, we affirmed an adjudication for the delinquent act of 18carrying a concealed weapon in a purse. See State in the Interest of K.M., 10-0649 (La.App. 4 Cir. 9/29/10), 49 So.3d 460.
Under the other provision, there is no restriction to “on the person.” It extends to a person’s possessing a firearm or having one “under his immediate control.” “Possession” under La. R.S. 14:95 E includes both actual and constructive possession. See State v. Blanchard, 99-3439, p. 6 (La.1/18/01), 776 So.2d 1165, 1170. For this statute’s purposes, there can be a violation even when possession of the firearm and possession of the narcotics are both constructive. Id.; see also State in the Interest of D.R., 10-0404, pp. 2-3 (La.App. 4 Cir. 11/10/10), 51 So.3d 844, 847-848. Constructive possession exists when a person has dominion or control of the contraband. See, e.g., State v. Every, 2009-0721, p. 15 (La.App. 4 Cir. 3/24/10), 35 So.3d 410, 421.
In contrasting the two provisions, one readily observes that the unlawful concealment of a weapon “on the person” does not allow for extending the offense to instances of constructive possession. Circumstantial evidence, however, can be used to establish concealment on the person. See State in the Interest of I.P., 10-0882 (La.App. 4 Cir. 12/8/10), 53 So.3d 658. There the officer observed a young person with his hand over his waistband, as if trying to hold onto something. Id., p. 2, 53 So.3d at 659. The officer instructed the young person to place his hands on a building’s window and, as he complied, a handgun landed on the ground at the juvenile’s feet. Id., p. 3, 53 So.3d 658.
We have previously stated that what is prohibited by § 95.8 A is “the mere knowing possession of a handgun, concealed or unconcealed on someone’s person.” State in the Interest of D.J., 08-0786, p. 5 (La.App. 4 Cir. 2/11/09), 5 So.3d9 923, 926 (emphasis added).[6] In comparing § 95 A(l) (the concealment statute) with § 95.8 A, we noted that under the first statute “carrying and possession are allowed as long as the weapon is not concealed, while under the [latter] statute, any possession is outlawed, whether concealed or not.” Id. But clearly the requirement of § 95 A(l) (“on one’s person”) and § 95.8 A (“on his person”) are identical and only proof beyond a reasonable doubt of actual possession of a handgun on the person of someone under seventeen-years old can suffice for an adjudication of delinquency under *1235 § 95.8 A. Constructive possession alone by the juvenile of a handgun is insufficient for a finding beyond a reasonable doubt that a juvenile unlawfully possessed a handgun.
B
We now turn to an examination of the facts.
Officer Slagle, in the company of other police officers, arrived at a location for which there had been complaints of young people smoking narcotics on the porch. While the other officers attended to the suspects on the porch, Officer Slagle spotted T.M. on the ground, crouching between the porch and a fence near a garbage can.
The undisputed evidence in this case is that Officer Slagle, the sole witness on this charge, only noticed the handgun on the ground next to where T.M. was crouched when T.M. stood up. Officer Slagle never saw T.M. with the gun on his person. The officer described the handgun as being in “close proximity” to T.M. He conceded that he never saw the gun in T.M.’s hand.
lipT.M. thus argues that the evidence adduced at trial was insufficient in that the State failed to prove that he possessed a handgun on his person.
The State responds that the juvenile-court judge as fact-finder could have concluded that T.M. had the gun on his person and then removed it when the officer discovered him. The State noted that while it is possible that a handgun was on the ground where T.M. coincidentally crouched down, the trier of fact could have reasonably inferred that the only reasonable explanation was that T.M. had just had the handgun on his person and discarded it on the ground where it was first discovered. We disagree.
To permit the fact-finder to make such an inference under these facts would im-permissibly expand the conduct prohibited by § 95.8 A to include constructive possession. While a fact-finder might reasonably infer that T.M. was constructively in possession of a handgun, such conduct is not proscribed by La. R.S. 14:95.8 A.
We, therefore, find that the juvenile-court judge was clearly wrong in finding that the State proved beyond a reasonable doubt that T.M. unlawfully possessed a handgun on his person. Because the evidence is insufficient to sustain the State’s burden on this charge, we reverse the adjudication.
IV
In this Part we consider the essential elements of the offense of unauthorized use of a motor vehicle and then consider the facts supported by the record.
A
“Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other’s consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.” La. R.S. 14:68.4. [nThe essential elements of the crime of unauthorized use of a motor vehicle are: (1) the intentional taking or use (2) of a motor vehicle (3) which belongs to another (4) without the other’s consent or by fraud. State v. Broussard, 09-1225, p. 3 (La.App. 3 Cir. 04/07/10), 34 So.3d 459, 461 citing State v. Rios, 44,132, p. 4 (La.App. 2 Cir. 4/8/09), 7 So.3d 832, 834.
First, the State must prove that T.M. intentionally took or used a motor vehicle. Specifically, the Louisiana Supreme Court “has expressly construed unauthorized use of a movable as ‘requiring a showing of mens rea or criminal intent, since the ‘evil’ state of mind of the actor normally distinguishes criminal acts (punishable by the *1236 state alone) from mere civil wrongs (actionable by private individuals against one another).’ ” State v. Bias, 400 So.2d 650, 652-53 (La.1981). If the State cannot prove the taking of the motor vehicle by T.M., the state must prove that T.M. knew the vehicle was taken without authorization. See State in the Interest of O.B., 559 So.2d 31, 33 (La.App. 4th Cir.1990) (“O.B. testified that he had no idea the car was stolen when he accepted the ride.”); State in the Interest of H.N., L.C., T.B., 97-0982 (La.App. 4 Cir. 7/8/98), 717 So.2d 666, 668 (“He said that he did not know the car was stolen.”); State v. Stevenson, 02-1152, p. 5 (La.App. 4 Cir. 1/22/03), 839 So.2d 203, 206 (“Accordingly, the evidence failed to establish that the defendant took or used the vehicle with the knowledge that it was stolen.”).
The State may use circumstantial evidence to prove T.M. knew the vehicle was taken without authorization, but this evidence must “exclude every reasonable hypothesis of innocence.” See State in the Interest of T.C., 09-1669, p. 5 (La.App. Cir.2/16/11), 60 So.3d 1260, 1263. See also LA. R.S. 15:438. Because of this high-standard of proof regarding the use of circumstantial evidence, the mere | ^inference of wrongful conduct from use of the vehicle does not create intent. State in the Interest of C.B., 09-1114, p. 8 (La.App. 4 Cir. 12/16/09), 28 So.3d 525, 529.
Secondly, the State must prove that T.M. took or used specifically a motor vehicle. State v. Broussard, 09-1225 (La.App. 3 Cir. 04/07/10), 34 So.3d 459, 461.
Third, the State must prove that the defendant took or used a motor vehicle which belonged to another. In State v. Dunbar, the Louisiana Supreme Court ruled that:
the crime of unauthorized use of a motor vehicle as defined in La. R.S. 14:68.4 is ... an offense against property, and ... the description of the vehicle taken or used, and not the identification of a particular person to whom the vehicle belonged, is essential to charging and proving the crime.
State v. Dunbar, 07-0219, p. 7 (La.02/26/08), 978 So.2d 899, 903 (La.2008). In discussing this essential element, the court stated that even if the state failed to prove that the vehicle specifically belonged to Ms. Adams, the “question remained whether the state had thereby also failed to prove that the vehicle ‘belonged to another’ for purposes of La. R.S. 14:68.4.” Id, p. 6, 978 So.2d at 902. The court concluded that the collective facts of “officer testimony that the vehicle had been reported stolen, identification of the owner through vehicle registration records, and subsequent conversations between the Officer and the owner confirming the theft ... provided the jury a rational basis to conclude that the Acura belonged to another person and not to defendant.”[7] Id, p. 8, 978 So.2d at 904.
To prove the fourth essential element, the State must show that the defendant took or used the motor vehicle without consent or by means of fraudulent conduct. In State v. Macon, The Louisiana Supreme Court ruled that La. R.S. 14:68.4 “does |13not specifically require the titled owner of the vehicle to testify and/or identify the vehicle.” State v. Macon, 2006-481, p. 14 (La.06/01/07), 957 So.2d 1280, 1287. The court held that if the State can *1237 prove that the defendant was aware that he was driving a stolen vehicle, then we can presume that there was no legitimate permission given to him to drive that particular vehicle. Id. The court in Macon concluded that the defendant had knowledge because he was stopped by the police for driving a vehicle he did not own with a tampered VIN, which led to the discovery of the true VIN and identity of the owner who previously reported the vehicle stolen. Id. p. 19-20, 957 So.2d at 1287-1288. Together with testimony by the defendant that he knew the vehicle was stolen, the court found that the defendant knew he had unauthorized use of a motor vehicle. Id.
Similarly, in State v. Broussard, the defendant argued that the evidence was insufficient to prove his guilt beyond a reasonable doubt “because the owner never testified or swore under oath that the vehicle was taken without his authority.” State v. Broussard, 09-1225, p. 6 (La.App. 8 Cir. 04/07/10), 34 So.3d 459, 462. The court concluded that the evidence of the stolen vehicle report, a confirmation of the facts given in the report, verification that the vehicle belonged to the owner, and verification that the owner wanted to file a stolen vehicle report showed “the unauthorized taking of vehicle.” Id.
In contrast, this Court has allowed the owner’s testimony to suffice as proof for lack of authorization to use a motor vehicle. In State v. Gustavis, this Court ruled that because there is no requirement that the vehicle be stolen to prove La. R.S. 14:68.4, the testimony by the owner of the vehicle that she neither knew the 114defendant nor gave him permission to use the vehicle, was sufficient to prove that the defendant had unauthorized use of the motor vehicle in question. State v. Gustavis, 2000-1855, p. 18 (La.App. 4 Cir. 05/30/01), 788 So.2d 1242, 1248.
B
We now turn to an examination of the facts.
After T.M. was arrested on the handgun possession charged, the police learned that there was a warrant for his arrest arising from an incident which had occurred one week earlier. Officer Smith testified that he had investigated an auto theft on May 18, 2011 and concluded that T.M. was the suspect.
Before we parse the officer’s testimony and that of the other witnesses called by the State, we note that the charging petition accused T.M. of the intentional taking or use of a motor vehicle belonging to L.R. Notably, the vehicle was not otherwise or further described in the petition. And L.R., the alleged owner, did not testify at the trial. In fact, other than being described as a female victim who did not live at the location from where the vehicle was stolen, L.R. was not identified.
The State questioned Officer Smith about his conversation with the “owner” and about the arrest warrant which had issued for T.M. At no time did Officer Smith report, either from his own observations or from the information he obtained from the “owner,” the make, model, color, or vehicle identification number of the automobile. Officer Smith did not ever personally observe T.M. in any automobile.
The State also called as a witness David Cohn, who lives with T.M.’s mother and siblings. Mr. Cohn denied that he told Officer Smith that T.M. was in possession of “the car.” He admitted that Kevin Anderson, a neighbor, had asked 11ahim to search for Mr. Anderson’s car, a gold-130 Infinity. The State then recalled Officer Smith who testified that Mr. Cohn had made such a statement. Officer Smith also insisted that the “victim” was a female *1238 and not a male. He also stated that the car was stolen from the victim’s sister’s house. Neither the sister nor her house was identified.
Finally, the State called T.M.’s twelve-year old sister who agreed that she told Officer Smith that T.M. stole the car.
T.M. thus argues that the evidence adduced at trial was insufficient in that the State failed to prove that he took or used a motor vehicle in which he was unauthorized to use.
The State responds that the testimonies of Officer Smith and Tyronisha Mitchell support the finding that T.M. had unauthorized use of a motor vehicle. The state also asks the court to rely on the fact-finder’s determination that Officer Smith’s testimony is more credible than Mr. Cohn’s testimony. The state cites State in the Interest of D.R. which supports that:
when findings are based on determinations regarding the credibility of witnesses, the manifest-error clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
State in the Interest of D.R., 2010-0405, p. 12 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 931-932 (citing Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973)). So, because of Mr. Cohn’s relationship to the mother and T.M., the State asserts that the fact-finder’s credibility determination is reasonable. We disagree.
To permit the fact-finder to make a credibility determination based upon impeachment testimony is in contradiction with the Louisiana Code of Evidence. Section 607(D)(2) of the Louisiana Code of Evidence reads:
| , (¡Other extrinsic evidence, including pri- or inconsistent statements and evidence contradicting the witness’ testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
LA. CE 607(D)(2). In State v. Alexis, the 5th Circuit held that witness statements made to a police officer, which were inconsistent with testimony ... could not be considered substantive evidence of ... guilt. State v. Alexis, 98-1145, p. 26 (La.App. 5 Cir. 06/01/99), 738 So.2d 57, 67. The court stated that the Louisiana Legislature “rejected the broad doctrine of substantive use of all prior inconsistent statements” and restricted non-hearsay use to statements that are inconsistent with prior testimony given under oath. Id, p. 24, 738 So.2d 57. Therefore, it was inappropriate for the juvenile-court judge to use Officer Smith’s testimony as substantive evidence and weigh the credibility of his testimony over Mr. Cohn’s because Officer Smith’s testimony of Mr. Cohn’s prior inconsistent statement was not a statement made under oath, so it could only be used to attack credibility of the witness.
In totality, the record does not support the finding that T.M. was found to have used the car described in the petition. Neither the petition nor the record gives a description of L.R.’s vehicle that was reported stolen, and the record only reflects that T.M. was seen using a motor vehicle, but the record does not provide any description of the- vehicle T.M. was seen using or that he was using L.R.’s vehicle. Because this crime is a crime against property, the description of the vehicle is essential to proving the crime, and the State has failed to prove this essential element.
*1239 | nWe, therefore, find that the juvenile-court judge was clearly wrong in finding that the State proved beyond a reasonable doubt that T.M. had unauthorized use of a motor vehicle. Because this evidence is insufficient to sustain the State’s burden on this charge, we reverse the adjudication.
DECREE
Accordingly, we reverse the adjudication of delinquency of T.M. for the offenses of illegal possession of a handgun by a juvenile and of unauthorized use of a motor vehicle; we dismiss the delinquency petition with prejudice, and discharge the child from custody.
REVERSED AND RENDERED

. The first offense handgun possession is a misdemeanor-grade delinquent act and the unauthorized use is a felony-grade delinquent act. See La. Ch.C. art. 804(3), (5), and (8).

. In State in the interest of A.H., 2010-1673, p. 9 (La.App. 4 Cir. 4/20/11), 65 So.3d 679, 685, we determined that conducting an error patent review in juvenile delinquency cases was warranted. La. Ch.C. art. 844 provides that the petition utilized to commence a juvenile delinquency proceeding must be verified. The petition utilized to commence the proceedings against T.M. herein is unverified. In State in the Interest of A.H., however, we found that the prosecution of A.H. ratified the unverified petition. State in the Interest of A.H., 2010-1673, p. 9, 65 So.3d at 685. Additionally, the Supreme Court has noted that the proper remedy for a lack of a signature on a petition is a motion to quash. If the motion is not filed, the error is waived. State v. White, 404 So.2d 1202, 1205 (La.1981). Thus, while our review determined that the State failed to obtain a verification of the *1231 petition, we find that the prosecution of T.M. ratified the unverified petition. Further, T.M. failed to timely file a motion to quash the petition. Therefore, we deem the error to be harmless,

. A review under the Jackson v. Virginia standard is made on "all of the evidence.” Jackson, 443 U.S. at 316, 99 S.Ct. 2781. See also Lockhart v. Nelson, 488 U.S. 33, 39-41, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) (all evidence includes evidence erroneously admitted). Under this standard, inadmissible evidence erroneously admitted is considered in a challenge to the sufficiency of evidence even if, had it been properly excluded, the remaining evidence would have been insufficient for a finding of guilt beyond a reasonable doubt. State v. Hearold, 603 So.2d 731, 734 (1992). Because we find from the entirety of the evidence here (admissible and erroneously inadmissible evidence) that all the evidence is insufficient to support the adjudications, we do not reach — and the parties have not briefed — whether under a Batiste standard of review for sufficiency in a juvenile adjudication proceeding we are so limited or whether we can excise erroneously admitted evidence in our review.

. See La. R.S. 14:1 ("This Chapter shall be known as the Louisiana Criminal Code.”)

. Notably, Brunson was decided under an even more stringent standard of review ("no evidence”) than the later Jackson v. Virginia, supra. Historically, based upon Louisiana’s constitution, a Louisiana court reviewing an adult conviction for the sufficiency of evidence was restricted to the "no evidence” standard. See, e.g., State v. Washington, 292 So.2d 234, 237 (La.1974) ("The sufficiency of the evidence is not reviewable on appeal; it is only where there is no evidence to support an essential element necessary to the conviction that the court will review the record on appeal.”). The Louisiana Supreme Court immediately characterized the Jackson v. Virginia standard of review as "broader” or "slightly broader” than the "no evidence” standard and noted that due process would be offended on direct appellate review of a conviction if a standard "lesser” than the one of Jackson v. Virginia were applied. State v. Mathews, 375 So.2d 1165, 1168 (La.1979).

. The precise holding in D.J., that § 95.8 A was not chargeable as a delinquent act in juvenile court, has been legislatively overruled by subsequent amendment to La. Ch.C. art. 804(3).

. The Court recognized that although officer’s testimony "had hearsay aspects, review of the sufficiency of evidence takes into account the entirety of the evidence introduced at trial, including evidence that may have been erroneously admitted." State v. Hearold, 603 So.2d 731 (La.1992); see Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).