PAUL A. BONIN, Judge.
| |D.R. was adjudicated a delinquent child[1] for a violation of La. R.S. 40:966 E(l), first offense simple possession of marijuana. The juvenile judge in the judgment of disposition committed D.R. to the custody of the Department of Public Safety and Corrections for two years two months, credit for time served.[2] D.R. appeals his adjudication as a delinquent child on the grounds that the evidence is insufficient to sustain the adjudication and that the juvenile judge improperly interrogated him while he was on the witness stand; he also appeals the disposition committing him for a period exceeding the maximum period allowed by law. See La. Ch.C. arts. 330 B and 331 A.
Because we conclude that the juvenile judge was not clearly wrong in finding beyond a reasonable doubt that D.R. was in possession of marijuana, and because we find no other reversible error, we affirm his adjudication as a delinquent child. But because we determine that the juvenile judge erred as a matter of law in the disposition committing D.R. to an excessive custodial period Lon this charge, we vacate the judgment of disposition, and remand the matter with instructions for a new disposition by the juvenile court consistent with our holding.
We explain our decision in the following Parts below. In Part I we consider D.R.’s assignment of error regarding the juvenile judge’s examination or interrogation of him during the trial. In Part II we discuss the proper standard of review for sufficiency of evidence in a juvenile adjudication. In Part III we consider the facts developed at trial and the law applicable to the offense for which D.R. was adjudicated, and apply the standard of review to the facts. In Part IV we review the law governing the disposition and period of commitment and set forth our remand instructions.
I
The juvenile judge first questioned D.R. during the direct examination by his attorney; there was no objection to that short series of questions. At the conclusion of D.R.’s very brief cross-examination by the prosecutor, the juvenile judge again began to question D.R. and an objection to this examination was lodged. Counsel for D.R. objected on the grounds that the *929 juvenile judge was asking D.R. “to possibly incriminate himself.” The judge replied that D.R. “possibly incriminated himself by getting on the stand.” See Brown v. United States, 356 U.S. 148, 154, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958) (a witness who voluntarily testifies cannot claim a Fifth Amendment “immunity from cross examination on the matters that he himself has put in dispute.”). D.R.’s counsel then objected on the grounds of relevancy. The judge overruled the objection to his own line of questions, stating “I’m going to ask the questions, because you put him on the stand.”
[sAt the outset, we note that on appeal D.R. argues a different basis for objection. Now D.R. argues that the juvenile judge stepped outside his role as a neutral and impartial factfinder and stepped into the role of adversary and advocate, which role of course is prohibited to the judge. But, “[ejrror may not be predicated upon a ruling which admits ... evidence unless a substantial right of the party is affected, and ... a timely objection ... appears of record, stating the specific ground of objection”. La. C.E. art. 103 A(l); see also La.C.Cr.P. art. 841 C. La.C.Cr.P. art. 841 A, which is applicable through La. Ch.C. art. 104(1), provides:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor, (emphasis added)
“It is well settled that [a] defendant must state the basis for his objection when he makes it so that the trial judge has an opportunity to rule on it and prevent or cure an error.” State v. Dupar, 353 So.2d 272, 273 (La.1977). Additionally, “a new ground for objection cannot be presented for the first time on appeal.” State v. Harris, 414 So.2d 325, 327 (La.1982).
In support of this new argument, D.R. relies on authorities treating the judge’s role in jury trials. In jury trials, the judge is prohibited from commenting upon the evidence in the presence of the jury. See La.C.Cr.P. art. 772. The purpose of this rule is to safeguard the role of the jury as the sole judge of the facts. State v. Grainer, 02-0703, p. 16 (La.App. 4 Cir. 12/4/02), 834 So.2d 555, 565. Thus, where a trial judge’s extensive questioning of a witness in a jury trial was deemed to be an improper comment upon the facts, the Supreme Court has Lreversed the conviction. State v. Williams, 375 So.2d 1379, 1385 (La.1979). Of course, there is no jury present in delinquency proceedings. See La. Ch.C. art. 882; In re State ex rel A.J., 09-0477 (La.12/1/09), 27 So.3d 247. The “no comment” rule of Article 772 is, therefore, not applicable to cases in which the judge, and not a jury,,, is the trier of fact. In State v. Layssard, 310 So.2d 107, 108 (La.1975), the Supreme Court noted:
Where the judge is the trier of fact he has the right to question the witness to clarify the evidence in his mind. Unless his participation in the trial is to such an extent and of such a nature that it deprives the defendant of a fair trial, there is no error.
Nevertheless, we have reviewed the juvenile judge’s interrogation of D.R., which was clearly more aggressive and extensive than the prosecutor’s cross-examination of D.R. A trial judge may question witnesses. See La. C.E. art. 614 B. Some of the judge’s questions could have been asked by the prosecutor, such as whether D.R. had “any other convictions [sic]” or had previously used marijuana. Others of the questions sought information that a juve *930 nile judge might want to know post-adjudication at a disposition hearing, such as whether D.R. had previously sold drugs, how long he had been smoking marijuana, and his school performance. Still others, such as “... so where do you get your drugs when you smoke marijuana?” or “Yeah, but if you found drugs you were going to take them, right?” suggest that the judge was morphing into the role of an adversarial advocate. The second circuit observed in Midyett v. Midyett, 32, 208 (La.App. 2 Cir. 9/22/99), 744 So.2d 669, 675, that
Comment (c) to La.Code Evid. Art. 614 states, however, that “the power of the court to question witnesses, moreover, does not authorize a court to exercise that power in the same manner as adversary counsel.” In other words, the trial judge, while asking a witness ^questions from the bench, must remain impartial and must not become an “advocate” for one side or the other.
While these questions do seem to go beyond merely clarifying evidence and approach developing evidence adverse to the child’s interest, they were generally relevant to the offense charged (possession with intent to distribute marijuana) and, based upon D.R.’s transcribed responses to the judge’s questions, he does not seem to have been intimidated, frightened, or cowered by the interrogation. Thus, even if we were to consider D.R.’s objection first raised on appeal, we discern no basis to conclude that the judge’s participation in this trial is to such an extent and of such a nature that it deprived D.R. of a fair trial.
II
In this Part we consider the proper standard by which we review D.R.’s adjudication as a delinquent. While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless civil in nature. In re C.B., 97-2783, p. 17 (La.3/4/98), 708 So.2d 391, 400 (“The hallmark of special juvenile procedures is their non-criminal nature.”). Because delinquency proceedings are not criminal proceedings, the scope of review in Louisiana extends to both law and facts. La. Const, art. V, § 10(B) provides in pertinent part:
Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts ... In criminal cases its appellate jurisdiction extends only to questions of law.
1 r,The Louisiana Supreme Court in State in the Interest of Batiste, 367 So.2d 784, 788 (La.1979), specifically decided that
Except as otherwise provided by the constitution, this Court’s jurisdiction in civil cases extends to both law and facts; in criminal matters, its criminal jurisdiction extends only to questions of law. La. Const.1974, art. 5, s 5(C). Juvenile delinquency proceedings do not fall within the category of criminal prosecutions, as is evident from long established jurisprudence ..., and the special juvenile provisions within the judiciary article of the constitution. La. Const.1974, art. 5, ss 10, 18 and 19. Accordingly, since the constitution does not provide otherwise, the scope of review of this court in juvenile delinquency proceedings extends to both the law and the facts, (ellipsis indicates citations omitted; emphasis added).
The Batiste court then evaluated the facts of that case and applied the manifest error standard of review:
... [A] side from the inference which possibly could be drawn from Batiste’s possession, there was no evidence tend *931 ing to prove that he took or misappropriated the bicycle. In opposition to the mere basis for possible inference provided by the state’s evidence, Batiste presented unrefuted testimony from sworn witnesses that Batiste had not taken or misappropriated the bicycle, but that he had obtained the movable lawfully. From this evidence we conclude that the juvenile court was clearly in error in finding beyond a reasonable doubt that Batiste committed unauthorized use of the bicycle.
Batiste, 367 So.2d at 789 (all emphasis added). See also State ex rel. D.F., 08-0812, p. 3 (La.App. 1 Cir. 6/6/08), 991 So.2d 1082, 1084-1085; State in the Interest of Cason, 438 So.2d 1130, 1131 (La.App. 2nd Cir.1983); State ex rel. T.W., 09-0532, p. 2 (La.App. 3 Cir. 10/7/09), 21 So.3d 465, 467-468; State in the Interest of S.S., 557 So.2d 407, 408 (La.App. 4th Cir.1990); State in the Interest of J.L., Jr., 592 So.2d 435, 438 (La.App. 5th Cir.1991).
This “clearly wrong” or “manifestly erroneous” standard of review is the same as the one applied in other civil cases. The standard of review for sufficiency of evidence for juvenile adjudications is the same as the one set out in Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989):
Although the meaning of these phrases [“manifest error” and “clearly wrong”] is not immediately apparent, certain general principles governing the exercise of the appellate court’s power to reverse findings of a trial court or jury may be derived from the cases.
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973) .... [citations omitted] A. Tate, “Manifest Error” Further observations on appellate review of facts in Louisiana civil cases, 22 La. L.Rev. 605, 611 (1962). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co. 469 So.2d 967 (La.1985). In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. See, F. Maraist, The Work of the Louisiana Appellate Courts for the 1978-1979 Term-A Faculty Symposium, Civil Procedure, 40 La. L.Rev. 761, 764 (1980); Comment, Appellate Review of Facts in | ^Louisiana Civil Cases, 21 La. L.Rev. 402, 412 (1961); Cf. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to *932 the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Canter, supra at 724 .... [citations omitted]. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. ... Cf. State v. Mussall, 523 So.2d 1305 (La.1988); Anderson v. City of Bessemer City, 470 U.S. 564, 105 S. Ct. 1504, 84 L.Ed.2d 518 (1985); U.S. v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Just as was done in Batiste, we apply this civil standard of review of facts and law to determine whether there is sufficient evidence of proof beyond a reasonable doubt to adjudicate a child a delinquent. The United States Supreme Court held in In re Winship that “the constitutional safeguard of proof beyond a reasonable doubt is ... required during the adjudicatory stage of a delinquency proceeding”. In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Court noted:
It is true, of course, that the juvenile may be engaging in a general course of conduct inimical to his welfare that calls for judicial intervention. But that intervention cannot take the form of subjecting the child to the stigma of a finding that he violated a criminal law and to the possibility of institutional confinement on proof insufficient to convict him were he an adult.
Id. at 367, 90 S.Ct. 1068. The Supreme Court’s holding had been grounded in its earlier decision that the Fourteenth Amendment’s Due Process Clause requires application of “the essentials of due process and fair treatment” during the adjudicatory hearing. Id. at 359, 90 S.Ct. 1068, citing In re Gault, 387 U.S. 1, 13 and 30, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Thus, D.R., and other Louisiana children, when charged with a “delinquent act”[3] enjoy the federal constitutional protection that the state must prove the delinquent act beyond a reasonable doubt. Moreover, D.R. enjoys state statutory protection to the same effect: “In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition.” La. Ch.C. art. 883.
To sum up, then, we apply the “clearly wrong” standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt.
B
Before actually applying this standard of review, it is helpful to acknowledge that there are decisions of this court, other *933 intermediate appellate courts, and even the Louisiana Supreme Court which occasionally identify the standard of review for sufficiency of evidence in juvenile adjudications as the constitutional rule announced in the United States Supreme Court decided Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[4]
| inBased in large measure upon its Win-ship holding, the Supreme Court in Jackson v. Virginia announced a federal constitutional rule, or standard of review, to guarantee that a factfinder had applied the correct standard of proof. The constitutionally required standard of proof (as distinguished from the standard of review) for a criminal conviction was defined in Jackson:
In short, Winship presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof — defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.
Jackson, 443 U.S. at 316, 99 S.Ct. 2781. The Supreme Court further explained that
The Winship doctrine requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence. A “reasonable doubt,” at a minimum, is one based upon “reason.” Yet a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as a jury. In a federal trial, such an occurrence has traditionally been deemed to require reversal of the conviction. ... Under Winship, which established proof beyond a reasonable doubt as an essential of Fourteenth Amendment due process, it follows that when such a conviction occurs in a state trial, it cannot constitutionally stand.
Jackson, 443 U.S. at 316-318, 99 S.Ct. 2781 (emphasis added; ellipsis indicates citations omitted).
The standard of review for sufficiency of evidence applicable to criminal convictions in state courts is set out in Jackson:
In After Winship the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” ... Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Johnson v. Louisiana, 406 U.S., at 362, 92 S.Ct., at 1624-1625.
Jackson, 443 U.S. at 318-319, 99 S.Ct. 2781 (bold emphasis, except in italics, in *934 original; all italicized emphasis added; ellipsis indicate citations omitted).
The Supreme Court went on to explain that this standard of review for sufficiency of evidence is highly deferential to the factfinder:
This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder’s role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon “jury” discretion only to the extent necessary to guarantee the fundamental protection of due process of law.
Jackson, 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original).
Jackson v. Virginia self-consciously and explicitly establishes and requires constitutional minimum standard of review which must be satisfied in order for either an adult conviction or a juvenile adjudication to satisfy the Due Process requirement of the Fourteenth Amendment. See Jackson, 443 U.S. at 319, n. 12, 99 S.Ct. 2781. Indeed, this federal “familiar standard” displaced the “no evidence” standard of 112review as it “is simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt.” Jackson, 443 U.S. at 320, 99 S.Ct. 2781.
Historically, based upon Louisiana’s constitution, a Louisiana court reviewing an adult conviction for the sufficiency of evidence was restricted to the “no evidence” standard. See, e.g., State v. Washington, 292 So.2d 234, 237 (La.1974) (“The sufficiency of the evidence is not reviewable on appeal; it is only where there is no evidence to support an essential element necessary to the conviction that the court will review the record on appeal.”). The Louisiana Supreme Court immediately characterized the Jackson v. Virginia standard of review as “broader” or “slightly broader” than the “no evidence” standard and noted that due process would be offended on direct appellate review of a conviction if a standard “lesser” than the one of Jackson v. Virginia were applied. State v. Mathews, 375 So.2d 1165, 1168 (La.1979). That Due Process minimum standard is still in use today in reviewing adult criminal convictions. See, e.g., State v. Robinson, 09-0409, p. 6 (La.App. 4 Cir. 8/19/09), 19 So.3d 520, 523.
But with respect to juvenile adjudications in Louisiana, Batiste was already applying a standard of review which exceeded the minimum standard required by Jackson v. Virginia[5] Thus, where the Louisiana constitutional prohibition or preclusion of factual review of adult criminal convictions had to yield or give way to the Jackson v. Virginia standard (but no further), no such modification of the standard for juvenile adjudications recognized in Batiste was required by Jackson v. Virginia.
11sSo, it is true that a juvenile adjudicated a delinquent would be entitled to a Jackson v. Virginia review but for Louisiana’s provision that a less deferential, or a broader, standard is available to the juvenile. As with any federal constitutional protection, states are free to afford their citizens protections which are greater than the minimum protection. See, e.g., Prune-Yard Shopping Center v. Robins, 447 U.S. *935 74, 81, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) (with respect to First Amendment free speech rights); Barker v. Wingo, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (with respect to the Sixth Amendment speedy trial right); Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 17 L.Ed.2d 730 (with respect to standards on search and seizure under the Fourth Amendment); See also William J. Brennan, Jr., The Bill of Rights and the States: The Revival of State Constitutions as Guardians of Individual Rights, 61 N.Y.U.L.Rev. 535, 548 (1986) (“As is well known, federal preservation of civil liberties is a minimum, which the states may surpass so long as there is no clash with federal law.”), Lee Hargrave, Declaration of Rights of Louisiana Constitution of 1971, 35 La. L.Rev. 1, 22 (1974) (“In fact, the last sentence of this section [La. Const, art. I, § 5] giving standing to persons who heretofore have been denied it in federal cases is an implicit recognition of the broadening of the right to suppress evidence obtained in violation of constitutional guarantees.”), and Thomas K. Clancy, The Fourth Amendment: Its History and Interpretation (Carolina Academic Press, 2008), p. 20 n. 75 (“States can afford more protection to individuals than the Fourth Amendment does but if the state constitution is construed to offer less, the Fourth Amendment serves as a floor.”).
While considerable deference is accorded the factfinder, the courts of appeal nonetheless have a constitutional duty to review facts. See Ambrose v. New Orleans Police Department Ambulance Service, 639 So.2d 216, 221 (La.7/5/94); see also Franklin Southland Printing Co. v. New Orleans Aviation Board, 99-60, p. |146 (La.App. 5 Cir. 7/27/99), 739 So.2d 977, 981.[6] And a child adjudicated a delinquent in Louisiana is entitled to a broader scope and standard of review than the minimum required by the Due Process clause. The Jackson v. Virginia standard requires the bare review of facts through the prism[7] of one of the parties, the prosecution.[8] All facts which may have been theoretically proved by the prosecution are accepted; the review is not limited to those facts which the factfinder actually found, perhaps discarding or disregarding some but not all prosecutorial “facts” or prosecutorial inferences. Moreover, while Jackson v. Virginia requires only that any rational trier of fact be convinced beyond a reasonable doubt, the Batiste standard looks to this particular trier of fact and whether his or her decision that there was proof beyond a reasonable doubt is not clearly wrong and is reasonable. (Indeed, in this case, the juvenile judge shared on the record facts and inferences which he accepted and, in some instances, rejected.) Consequently, review of the law and facts under the juvenile standard is “a somewhat *936 broader scope of appellate review than that mandated by the Jackson v. Virginia standard.” State in the Interest of Cason, 438 So.2d at 1131. Although the Batiste standard of review is somewhat broader than the Jackson v. Virginia minimum standard, the Batiste standard remains highly deferential to the function and findings of the trier of fact, the juvenile judge.
|1fiWith the proper standard of review in mind, we turn now to a review of the facts in this case.
Ill
In this Part we consider the facts of this case, the applicable law for the offense for which he was adjudicated, and apply the proper standard of review.
A
On June 16, 2009, Detectives Dan Malo and Michael Lorio were driving on Monroe Street in a marked police vehicle when they observed D.R. walk from the corner store on Belfast and Monroe, cross the street, and walk to the side of a house on the opposite corner. As D.R. crossed the street, he looked back at the police cruiser, causing the detectives to become suspicious. They followed D.R. a short distance, losing sight of him for a few seconds as he passed to the far side of the corner house, and observed him in a crouched position on the side of the house. Then D.R. stood up and walked back toward the corner store. Detective Malo called D.R. over to the vehicle while Detective Lorio investigated the area where D.R. had been observed crouching by the house. From that area Detective Lorio recovered a clear bag of six smaller bags containing marijuana. Detective Malo arrested D.R. for possession of marijuana, and as he was being transported to the juvenile division, D.R. told the detectives that he had “just found the weed” and that he “couldn’t go back to jail.” Detective Malo observed during the arrest that D.R. had on his ankle an electronic monitoring bracelet of the type ordered by a court.
At the adjudication hearing, after both officers testified, D.R. testified on his own behalf. He stated that on the date of his arrest, he was planning to stop by the corner store on his way to visit his sister when he saw the police car. He crossed 116the street and saw someone who was near the house put something under it. Believing that the person had put drugs beneath the house, D.R. went to that spot to see what it was. He did not know what it was and “couldn’t even much touch it.” Then D.R. looked up and saw the police car; he went to the vehicle, where he was arrested thereafter for possession with intent to distribute marijuana. D.R. admitted that, if what was under the house had turned out to be marijuana, he would have taken possession of it, but he denied ever having that opportunity. In response to a question by the juvenile judge, D.R. admitted to being a marijuana smoker. The trial judge thereafter adjudicated D.R. delinquent for the offense of possession of marijuana, which is responsive to the offense charged. See La. R.S. 40:966 E(l) and La.C.Cr.P. art. 814 A(49).
B
D.R. argues that the prosecution has failed to prove that he was in possession of marijuana. Possession may be proven by actual physical possession or by constructive possession. State v. Trahan, 425 So.2d 1222, 1226 (La.1983). When the prosecution is unable to prove actual possession of contraband drugs, proof of constructive possession is sufficient to support the conviction. State v. Perron, 01-0214, p. 6 (La.App. 4 Cir. 1/16/02), 806 So.2d 924, 928. To prove constructive possession, the prosecution must establish that the ac *937 cused had “dominion and control over the contraband.” State v. Harris, 647 So.2d 337, 338-39 (La.1994). Factors to be considered in determining whether a defendant exercised dominion and control over drugs are: the defendant’s knowledge that illegal drugs were present in the area, the defendant’s relation with the person in actual possession, the defendant’s access to the area where the drugs were found, evidence of recent drug use, the defendant’s proximity to the drugs, and evidence that the area was |17being frequented by drug users. State v. Walker, 99-1957, p. 3 (La.App. 4 Cir. 5/17/00), 764 So.2d 1130, 1133. However, mere presence in an area where drugs are located does not constitute constructive possession. State v. Toups, 01-1875, p. 4 (La.10/15/02), 833 So.2d 910, 913. Each case turns on its particular facts. Harris, 647 So.2d at 339.
C
Applying the relevant standard of review, we conclude that the juvenile judge was not clearly wrong in finding beyond a reasonable doubt that D.R. was in possession of marijuana. The detectives and D.R. observed each other, and then D.R. crossed the street in front of the police and looked back at their police unit. D.R. then disappeared around the side of the house, and the detectives pulled up to see him crouched there. Furthermore, Detective Lorio found a bag of marijuana under the house where D.R. had been crouching down. Although there is no evidence that D.R. was in actual possession of marijuana, we agree that the juvenile judge could reasonably find that D.R. was in constructive possession. D.R. acknowledged during the juvenile judge’s examination that this was a corner known for the sale of illegal drugs. D.R. had access to the spot under the abandoned house where the marijuana was recovered. He was discovered in close proximity thereto. Once inside the police car, D.R. told the detectives that the drugs were not his and claimed to have seen someone put something underneath the house — which he assumed to be drugs. On review of these facts and the reasonable inferences that may be made therefrom, we do find no clear error in the juvenile judge’s finding D.R. in possession of marijuana, and conclude that it is reasonable for the juvenile judge to find beyond a reasonable doubt that D.R. is | ^delinquent. We, therefore, conclude that there is sufficient evidence to affirm the finding of delinquency.
IV
In this Part we turn to a review of the disposition. La. Ch.C. art. 804(8) provides
“Misdemeanor-grade delinquent act” means any offense which if committed by an adult is other than a felony and includes the violation of an ordinance providing a penal sanction.
A felony “is any crime for which an offender may be sentenced to death or imprisonment at hard labor.” La. R.S. 14:2 A(4). On a first conviction for possession of marijuana, the violation of which the juvenile judge adjudicated D.R., “the offender shall be fined not more than five hundred dollars, imprisoned in the parish jail for not more than six months, or both.” La. R.S. 40:966 E(l) (emphasis supplied).[9] Because an adult offender could not be sentenced to hard labor upon conviction of simple possession of marijuana, it is a misdemeanor-grade delinquent act. The judgment of disposition which committed D.R. to the corrections department for a period of two years two months exceeded the maximum *938 term and must be vacated and a proper judgment of disposition rendered. See La. Ch.C. arts. 104(1) and 803 (providing that when the Children’s Code does not provide the procedure, a court should proceed according to the Code of Criminal Procedure). When the delinquent child has not been placed on probation, “[n]o judgment of disposition shall remain for a period exceeding the ^maximum term of the offense which forms the basis for the adjudication ...” La. Ch.C. art. 900 A.
“If the appellate court finds that a sentence must be set aside on any ground, the court shall remand for resentence by the trial court. The appellate court may give direction to the trial court concerning the proper sentence to impose.” La.C.Cr.P. arts. 881.4 A; see also La.C.Cr.P. art. 882 A (“An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review”) Accordingly, the judgment of disposition in these proceedings is vacated.
REMAND INSTRUCTIONS
We remand this matter to the juvenile court to conduct a new disposition hearing at which the court shall render a judgment within the limits of La. Ch.C. art. 900 A and, in due course, notify the Department of Public Safety and Corrections of the revised disposition.
DECREE
The adjudication of D.R. as a delinquent child for a violation of simple possession of marijuana is affirmed. We vacate the disposition committing D.R. to custody for up to twenty-six months and remand for a new disposition hearing consistent with this opinion.
ADJUDICATION AFFIRMED;DISPOSITION VACATED AND REMANDED
LOMBARD, J., concurs in the result.

. See La. Ch.C. art. 804(1) and (3).

. The commitment was to run "concurrent” with two others. The periods of time served pre-disposition judgment are July 27, 2009 through August 5, 2009 and October 14, 2009 through January 6, 2010.

. La. Ch.C. art. 804(3) defines the term:
"Delinquent act” means an act committed by a child of ten years of age or older which if committed by an adult is designated an offense under the statutes or ordinances of this state, or of another state if the act occurred in another state, or under federal law, except traffic violations. It includes a direct contempt of court by a child.

. See State ex rel. R.T., 00-0205, p. 2 (La.3/30/01), 781 So.2d 1239, 1241; State in the Interest of Pigott, 413 So.2d 659, 661 (La.App. 1st Cir. 1982); State ex rel, P.R.R., Jr., 45,405, pp. 5-6 (La.App. 2 Cir. 5/19/10), 36 So.3d 1138, 1141; State ex rel. J.L., 09-0792, pp. 4-5 (La.App. 4 Cir. 10/14/09), 23 So.3d 993, 995; see also State ex rel. S.O., 10-0551, pp. 3-4 (La.App. 4 Cir. 9/3/10), 49 So.3d 1 (Bonin, J., concurring), and State ex rel. K.M., 10-0649 (La.App. 4 Cir. 9/29/10), 49 So.3d 460 (Bonin, J., concurring).

. Jaclcson was decided shortly after Batiste. Batiste was decided January 29, 1979 and Jackson was decided June 28, 1979.

. But also see Frank L. Maraist, 1 La. Civ. L. Treatise, Civil Procedure § 14:14, n. 2 ("Contrary to some statements in appellate opinions, there is no constitutional duty to review facts, but an appellate court has the constitutional power to do so.”) (emphasis in original)

. See, e.g., Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App.2004).

. Compare pro-party standards in evaluating civil motions such as directed verdict, La. C.C.P. art. 1810, Yount v. Lafayette Insurance Co., 08-0380, p. 8 (La.App. 4 Cir. 1/28/09), 4 So.3d 162, 168 ("The question to be asked by the court is not whether mover proved its case by a preponderance of the evidence, but rather, upon viewing the evidence submitted, the court could conclude that reasonable persons could not have reached a verdict in favor of mover’s opponent.”), or JNOV, La. C.C.P. art. 1811, Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991) ("A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict.”).

. There are exceptions to the penalty when the amount of marijuana possessed is sixty pounds or more. See La. R.S. 40:966 E(l) and F.