80 So.3d 18 (2011)
STATE of Louisiana in the Interest of D.M.
No. 2011-CA-0462.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 2011.
*19 Pascale Belizaire Watson, Juvenile Regional Services, Inc., New Orleans, LA, Katherine M. Franks, Louisiana Appellate Project, Abita Springs, LA, for Appellant, D.M.
Leon A. Cannizzaro, Jr., District Attorney, Alyson Graugnard, Brad Scott, Assistant District Attorneys, New Orleans, LA, for Appellee, State of Louisiana.
(Court composed of Judge CHARLES R. JONES, Judge PAUL A. BONIN, Judge DANIEL L. DYSART).
PAUL A. BONIN, Judge.
D.M., a child, was adjudicated delinquent for a violation of La. R.S. 14:68.4, the unauthorized use of a motor vehicle, a felony-grade delinquent act.[1]See LA. CH.C. ART. 804(5). At the disposition hearing, D.M. was ordered to confinement for not more than one year, which was suspended on condition of his satisfactorily completing a two-year probationary period. D.M. argues on appeal that the evidence is insufficient to prove beyond a reasonable doubt that he knew the vehicle was taken without its owner's authorization, an essential element of the offense. We agree.
The juvenile-court judge was clearly wrong in adjudicating D.M. a delinquent because the evidence is insufficient to find beyond a reasonable doubt that D.M. knew that the vehicle in which he was a passenger was taken without the consent of its owner. Thus, we reverse the adjudication, dismiss the proceedings with prejudice, and discharge D.M. on this charge. We explain our decision in the following Parts.

I
In this Part we consider the burden of proof required for adjudication in a delinquency proceeding, particularly as it is applied to the delinquent act charged.
The United States Supreme Court held in In re Winship that "the constitutional safeguard of proof beyond a reasonable doubt is ... required during the adjudicatory stage of a delinquency proceeding". In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Court observed that "[i]t is true, of course, that the juvenile may be engaging in a general course of conduct inimical to his welfare *20 that calls for judicial intervention." Id. at 367, 90 S.Ct. 1068. "But that intervention cannot take the form of subjecting the child to the stigma of a finding that he violated a criminal law and to the possibility of institutional confinement on proof insufficient to convict him were he an adult." Id.
The Supreme Court's holding was grounded in its earlier decision that the Fourteenth Amendment's Due Process Clause requires application of "the essentials of due process and fair treatment" during the adjudicatory hearing. Id. at 359, 90 S.Ct. 1068, citing In re Gault, 387 U.S. 1, 13 and 30, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Thus, D.M., and other Louisiana children, when charged with a "delinquent act"[2] enjoy the federal constitutional protection that the state must prove the delinquent act beyond a reasonable doubt. "A `reasonable doubt,' at a minimum, is one based upon `reason.'" Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). And, the Supreme Court also noted that the trier of fact must be convinced "beyond a reasonable doubt of the existence of every element of the offense." Jackson, 443 U.S. at 316, 99 S.Ct. 2781 (emphasis added).
Moreover, D.M. enjoys state statutory protection to the same effect: "In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition." LA. CH.C. ART. 883.
As charged in this case, the unauthorized use of a motor vehicle "is the intentional taking or use of a motor vehicle which belongs to another, ... without the other's consent, ... but without any intention to deprive the other of the motor vehicle permanently." LA. R.S. 14:68.4 A. Intent generally remains an indispensable element of a criminal offense. See State v. Brown, 389 So.2d 48, 50 (La.1980); see also State v. Bias, 400 So.2d 650, 653 (La.1981).
The lack of intention to deprive the owner of the vehicle permanently is the factor which distinguishes unauthorized use of a motor vehicle from theft.[3]See State in the Interest of Batiste, 367 So.2d 784, 789 (La. 1979). Thus, unauthorized use of a motor vehicle requires a taking by the culprit. Id. In order to adjudicate him delinquent, the evidence then must tend to prove that D.M. took the motor vehicle without its owner's authorization. Id.
If the state cannot establish the taking by D.M., then it must establish that he knew that the vehicle was taken without its owner's authorization. See State in the Interest of O.B., 559 So.2d 31, 33 (La.App. 4th Cir.1990) ("O.B. testified that he had no idea the car was stolen when he accepted the ride."); State in the Interest of H.N., L.C., T.B., 97-0982 (La.App. 4 Cir. 7/8/98), 717 So.2d 666, 668 ("He said that he did not know the car was stolen."); *21 State v. Stevenson, 02-1152, p. 5 (La.App. 4 Cir. 1/22/03), 839 So.2d 203, 206 ("Accordingly, the evidence failed to establish that the defendant took or used the vehicle with the knowledge that it was stolen.")
If the prosecution cannot produce evidence that D.M. knew that the vehicle was taken without its owner's authorization, the mere inference of wrongful conduct by his presence in the vehicle does not, beyond a reasonable doubt, create the necessary mens rea or criminal intent for him to be adjudicated delinquent under the statute with which he is charged. See State in the Interest of C.B., 09-1114, p. 8 (La.App. 4 Cir. 12/16/09), 28 So.3d 525, 529.
Of course, knowledge that the vehicle was taken without its owner's authorization may be proven by circumstantial evidence. See State in the Interest of T.C., 09-1669, p. 5 (La.App. 4 Cir. 2/16/11), 60 So.3d 1260, 1263. See also LA. R.S. 15:438 ("The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.")

II
In this Part we address the evidence upon which the juvenile-court judge adjudicated D.M. delinquent.
At the outset we observe that there is no factual dispute that the motor vehicle, or van, in which D.M. was a passenger had been taken without its owner's authorization. The owner testified unchallenged.
Within hours of the owner's having reported her van stolen, a police officer observed the vehicle being driven with four people inside. Because he was in an unmarked police car at the time, the officer called for the assistance of other police units. He briefly followed the van until the other police units arrived to the scene. When the marked cars activated their lights and sirens, the driver of the van sped away, beginning a police chase. The van stopped on the levee, and all four occupants fled into the nearby woods. The two passengers on the passenger-side exited on that side and ran to the right. The driver and D.M., who had been seated behind the driver, ran to the left. When the four passengers fled, the van was left in reverse, so it backed down the levee into the police units. The responding officer entered the van and put it in park before pursuing the four suspects. Within minutes the police, with the aid of a canine, captured D.M. and the driver nearby.
The driver of the van was eighteen years old and, thus, old enough to have an operator's license. There was no damage to the windows of the van and no broken glass in the van.
The only damage to the car indicative of its having been stolen is at the base of the steering column, where the protective covering had been removed and placed on top of the steering column. Because of the darkness, the officer stated that "it was really hard to get a good look at it." But on inspection he was able to see that the ignition device had been defeated so that a key would have been unnecessary to start the van.
Because there is no other evidence indicating that the car was stolen, in order for D.M. to be guilty of knowingly having used a stolen vehicle, he must have seen either the damage to the steering column or the lack of a key in the ignition. The evidence established that the steering-column damage was visible from anywhere in the front seat. In evidence is a photograph of the damage taken by the van's owner from outside the van near the front passenger seat. Also, the officer had climbed into the backseat and noted that from the passenger-side he could see the steering-column *22 damage from an angle. But he did not sit in the backseat where D.M. was sitting or make a determination about whether the damage was visible to a person seated behind the driver as D.M. was.
Tellingly, when D.M.'s counsel asked the van owner how long she had owned the vehicle, laying the foundation for questions concerning whether a passenger seated behind the driver could see the steering column, the prosecutor objected on the grounds that that line of questioning called for too much speculation: "you also have to distinguish how close you are to the door, how close you are to the middle. I just think it would call for too much speculation." The trial judge overruled the objection, but permitted the owner to testify only as to what she has personally observed from her sitting in the back seat of the van. The owner of the vehicle had never been seated in the back seat behind the driver, so she, too, was unable to establish whether anyone could see the damage to the steering column from D.M.'s vantage point. Thus, there is no direct or circumstantial evidence that from D.M.'s position in the van he could have observed the only damage to the vehicle or that he could have observed whether the van was being operated without a key in the ignition.
Because D.M.'s mere presence in the van is insufficient to prove knowledge of the theft of the van, the state relies on the circumstantial evidence of D.M.'s flight in an attempt to show that D.M. had knowledge that the van was stolen. Flight from a police officer, the state argues, "indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt." State v. Davies, 350 So.2d 586, 588 (La.1977).

III
In this Part we address the standard by which we review the juvenile-court judge's adjudication of D.M. and apply it to the findings of the juvenile court.

A
While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless civil in nature. In re C.B., 97-2783 (La.3/4/98), 708 So.2d 391, 400 ("The hallmark of special juvenile procedures is their non-criminal nature."). Because delinquency proceedings are not criminal proceedings, the scope of review in Louisiana extends to both law and facts. "Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts." LA. CONST. ART. V, § 10(B). "In criminal cases its appellate jurisdiction extends only to questions of law." Id. Because "the constitution does not provide otherwise, the scope of review of this Court in juvenile delinquency proceedings extends to both the law and the facts." State in the Interest of Batiste, 367 So.2d at 788. Batiste then applied the well-known manifest error standard of review utilized in civil proceedings to adjudication-of-delinquency proceedings. Id. at 789 ("From this evidence we conclude that the juvenile court was clearly in error in finding beyond a reasonable doubt that Batiste committed unauthorized use of the bicycle.")
Thus, "we apply the `clearly wrong' standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt." State in the Interest of D.R., 10-0405, p. 9 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 932. The clearly wrong standard of review is broader than the constitutional minimum standard of review of Jackson v. Virginia, which must be satisfied *23 in order for either an adult conviction or a juvenile adjudication to satisfy the Due Process requirement of the Fourteenth Amendment. Id. p. 14, at 935-36. See also State in the Interest of Cason, No. 15612 (La.App. 2nd Cir.1983), 438 So.2d 1130, 1131. On the one hand, "a juvenile adjudicated a delinquent would be entitled to a Jackson v. Virginia review but for Louisiana's provision that a less deferential, or a broader, standard is available to the juvenile." State in the Interest of D.R., 10-0405 p. 13, 50 So.3d at 934. On the other hand, "a child adjudicated a delinquent in Louisiana is entitled to a broader scope and standard of review than the minimum required by the Due Process clause." Id. 10-0405 p. 14, 50 So.3d at 935.
The Jackson v. Virginia standard requires the bare review of facts slanted or tilted in favor of one of the parties, the prosecution. All facts which may have been theoretically proved by the prosecution are accepted; the review is not limited to those facts which the fact-finder actually found, perhaps discarding or disregarding some but not all prosecutorial "facts" or prosecutorial inferences. Moreover, while Jackson v. Virginia requires only that any rational trier of fact be convinced beyond a reasonable doubt, the Batiste standard looks to this particular trier of fact and whether his or her decision that there was proof beyond a reasonable doubt is not clearly wrong and is reasonable. Although the Batiste standard of review is somewhat broader than the Jackson v. Virginia minimum standard, the Batiste standard remains highly deferential to the function and findings of the trier of fact, the juvenile judge.

B
We apply the general principles of a manifest error/clearly wrong standard of review according to the principles announced in Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989). See State in the Interest of D.R., supra. Just as in a Jackson v. Virginia review, we review the entire record. Our review function is not complete "by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court." Rosell, supra at 844.
In our record review, we must defer to factual findings which are based on or dependent upon the juvenile-court judge's "determinations regarding the credibility of witnesses" because "only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Rosell v. ESCO, 549 So.2d at 844. But a fact-finder's determination to credit a witness's story, however, is not entitled to deference "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story." Id. at 844-845. If we find such, we as a "court of appeal may well find manifest error or clear wrongness." Id. at 845. Here, because the basic historical facts are undisputed, there are no credibility-dependent determinations by the juvenile-court judge.
We also, however, may not disturb "reasonable inferences of fact" "even though we may feel that our own evaluations and inferences are as reasonable." Id. at 844, citing to Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). We are mindful that "[i]n applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is *24 not to decide factual issues de novo." Rosell, supra at 844. Here, because the juvenile-court judge did not make any specific factual findings on the record, we assume that the fact-finder inferred that, in the absence of any other evidence that D.M. knew the van was stolen, his fleeing from the officers sufficed to prove his guilty knowledge. We thus consider whether that is a reasonable inference of fact sufficient to prove his guilty knowledge beyond a reasonable doubt. We find that it does not.
D.M.'s flight coupled with his presence in a stolen car most assuredly may give rise to the probable cause necessary for his arrest, but it does not satisfy the high burden of proof necessary to establish the element of knowledge beyond a reasonable doubt. While flight may create an inference of guilt, "flight from police officers alone cannot be sufficient to prove guilt, given that flight alone is insufficient to justify an investigatory stop based on reasonable suspicion." State v. Dunbar, 06-1030 p. 9 (La.App. 4 Cir. 1/10/07), 950 So.2d 872, 877 (reversed on other grounds); see also State v. Morgan, 09-2352 p. 8 (La.3/15/11), 59 So.3d 403, 408 ("Although flight ... is, by itself, insufficient to justify an investigatory stop, we have held that this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause.").
While fleeing from police surely establishes that D.M. "may be engaging in a general course of conduct inimical to his welfare that calls for judicial intervention," In re Winship, 397 U.S. at 367, 90 S.Ct. 1068, it is not proof beyond a reasonable doubt so as to trigger the sanction of a delinquency-adjudication.

C
Just as was done in Batiste, having applied this civil standard of review of facts and law, we determine that the juvenile-court judge was clearly wrong in inferring from D.M.'s flight from the police that he knew beyond a reasonable doubt that the van was stolen. We conclude that the evidence is insufficient to prove every element beyond a reasonable doubt that D.M. knew the van was stolen and that he committed the delinquent act.

DECREE
We reverse the adjudication of D.M. as a delinquent child for a violation of La. R.S. 14:68.4, the unauthorized use of a motor vehicle. We dismiss the proceedings with prejudice, and discharge D.M. on this charge.
REVERSED AND RENDERED
JONES, J., concurs with reasons.
DYSART, J., dissents with reasons.
JONES. J., concurs with reasons.
The record before this Court demonstrates that there is insufficient evidence to adjudicate the juvenile as delinquent with unauthorized use of a motor vehicle. For these reasons, I respectfully concur.
DYSART, J., dissents, with reasons.
Because I find that the State offered sufficient evidence to prove the defendant's guilt beyond a reasonable doubt, I respectfully dissent.
Officer Terrell testified on direct that one could see that the steering column had been compromised and that there was no key in the ignition "from all vantage points." On cross examination, the officer was asked if he sat on the passenger seat behind the front seat passenger. He responded, "No. I entered through the rear passenger seat, to retrieve the rifle. At that time I could seeyou can get an *25 angle from the back of the seat, that the steering column was defeated." To clarify, the defense attorney asked, "And what side of the rear passenger [sic] did you enter from?" Officer Terrell responded, "The driver's side."
This testimonial evidence is sufficient to prove that the defendant could indeed see from his seat in the van that the steering column had been defeated, and therefore, knew that the car was stolen. Applying the manifest error/clearly wrong standard enunciated in the majority's opinion, I find there is sufficient evidence to affirm the adjudication of the trial court.
NOTES
[1] D.M. was also adjudicated a delinquent for resisting an officer, a violation of La. R.S. 14:108, a misdemeanor-grade delinquent act. See LA. CH.C. ART. 804(8). He is not appealing that adjudication, which is now final.
[2] La. Ch.C. art. 804(3) defines the term:

"Delinquent act" means an act committed by a child of ten years of age or older which if committed by an adult is designated an offense under the statutes or ordinances of this state, or of another state if the offense occurred there, or under federal law, except traffic violations. It includes an act constituting an offense under R.S. 14:95.8, an act constituting an offense under R.S. 14:81.1.1(A)(2), and a direct contempt of court committed by a child.
[3] See, e.g., La. R.S. 14:67 A (emphasis added): "Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking.... An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential."