STATE OF LOUISIANA IN
THE INTEREST OF D.J.

                \*         **NO. 2023-CA-0412**

                \*         **COURT OF APPEAL**

                \*         **FOURTH CIRCUIT**

                \*         **STATE OF LOUISIANA**

                \*

                \*

            \* \* \* \* \* \* \*

*SCJ*

**JENKINS, J., DISSENTS AND ASSIGNS REASONS**

I respectfully dissent from the majority opinion. Upon my review of this record, and in light of applicable law and jurisprudence, I find the evidence and testimony presented in this case to be insufficient to sustain the adjudication of the juvenile for all three of the charged offenses.[1] For the following reasons, I find the juvenile court was manifestly erroneous in adjudicating D.J. a delinquent for the charged offenses.

**Insufficient Evidence for Armed Robbery**

In regards to the offense of armed robbery, I find the State failed to prove the identity of D.J. as the perpetrator of the offense. To support an adjudication for the offense of armed robbery, the State must prove beyond a reasonable doubt that D.J. took "anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. R.S. 14:64. In addition to proving the statutory elements of the offense, the State must prove the identity of the defendant as the perpetrator. *State v. Draughn*, 05-1825, p. 8 (La. 1/17/07), 950 So.2d 583,

---

[1] As discussed in footnotes 2 and 3, I also disagree with the majority's reasoning and findings as to the juvenile court's rulings on hearsay testimony and the admissibility of the video evidence and social media image. And even in consideration of evidence that I find inadmissible, I conclude that the entirety of evidence is insufficient to establish the essential elements of each charged offense and that the adjudications must be reversed.

1

593, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). "When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt." *State v. Holmes*, 05-1248, p. 8 (La. App. 4 Cir. 5/10/06), 931 So.2d 1157, 1162 (citing *State v. Bright*, 98-0398 (La. 4/11/00), 776 So.2d 1134, 1147).

In this case, the State did not introduce testimony of the alleged victim of the armed robbery. Moreover, the State did not introduce testimony from anyone who identified D.J., either prior to trial or as an in-court identification, as the perpetrator of the offense.

In support of the allegation of armed robbery, the State presented testimony only from Det. McKay and introduced video surveillance footage of the alleged offense. Det. McKay did not identify the victim in her testimony and she testified that she did not meet with or interview the victim of the armed robbery. Moreover, Det. McKay testified that the victim did not make an identification of D.J. or the other juvenile, K.B., alleged to have committed the offense. Det. McKay's testimony regarding the armed robbery consisted of a description of what she viewed on the video surveillance footage.

The video surveillance footage was introduced over defense counsel's objection on the grounds of lack of authentication. In consideration that this Court's reviews all admissible and inadmissible evidence introduced at the adjudication, we have reviewed the video surveillance footage.[2] The recording

---

[2] D.J.'s fourth assignment of error argues that the trial court erred in admitting the video surveillance footage, because it was not properly authenticated and the State failed to lay a proper foundation. I agree.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901(A). "Such evidence may come in the form of

runs for a total of one minute and forty seconds; but, the video footage of the alleged offense runs for approximately twenty-five seconds. The scene appears to be a street or an alley next to a building, but with no identifying street or building signs in the video. A white sedan or sport utility vehicle ("the victim's vehicle") pulls into view and stops; the license plate, make, and model of the car are not visible. Within ten seconds, another, very similar looking white sedan or sport utility vehicle pulls alongside the driver side of the victim's vehicle. A person in a red hoodie and wearing a face mask exits the front passenger door of the second vehicle, opens the driver door of the victim's vehicle and pulls the driver out. A second person, wearing a black shirt and patterned head covering or mask, emerges from the driver door of the second vehicle, walks around and in between the two vehicles for 1-2 seconds, then quickly returns to the driver seat of the second vehicle as the person in the red hoodie gets into the driver seat of the victim's vehicle. The two vehicles then pull out of frame, in reverse. I also note that both persons from the second vehicle appear to be holding objects in their right hands.

After viewing this video, Det. McKay testified that she learned of a social media account, which other detectives determined to be the account of D.J. From

_____

testimony by a witness with knowledge that the matter is what it is asserted to be; indications of the item's distinctive characteristics, including its contents, . . .; or evidence describing the process or system used to produce the item and showing that the process or system produces an accurate result." *State v. Rice*, 17-0446, pp. 2-3 (La. 6/29/17), 222 So.3d 32, 33. Similar to the case of *State in the Interest of J.H.*, unpub., 22-0324, pp. 11-12 (La. App. 4 Cir. 8/9/22), --So.3d--, 2022 WL 3210100, *as clarified on reh'g* (La. App. 4 Cir. 8/19/22), the State failed to offer testimony from someone who maintained the video surveillance system that recorded the video, to testify regarding the process or system by which it was created and to attest to the accuracy of the video. And, in this case, other than the time, date, and location stamp on the video, there are no identifying markers of the area shown in the video. Det. McKay made a statement that she was familiar with the area depicted in the video. While this statement identifies the location, Det. McKay did not testify to being familiar with the system that recorded the footage and, therefore, Det. McKay could not testify that this video accurately reflects the time or date of the video. *Cf. State v. Groves*, 20-0450, pp. 29-32 (La. App. 4 Cir. 6/10/21), 323 So.3d 957, 975-977 (finding that the FBI Agent provided significant, detailed testimony about the discovery and retrieval of videos from social media, laying the proper foundation and authentication of evidence).

In this case, as in *J.H.*, I find Det. McKay's testimony fails to lay the proper foundation for the authentication of this video evidence.

that social media account, the State introduced a screen shot image, which the juvenile court admitted into evidence over defense counsel's objection.[3]  State's Exhibit 3 is a screen shot from a social media account, which appears to show a person wearing a patterned head covering/mask and a white shirt.  The screen shot image does not include D.J.'s name.  Although there is a screen name at the top of the image, Det. McKay did not refer to any screen name in her testimony.  In addition, Det. McKay did not testify that D.J. was identified as the person pictured in the image, only that he was identified as the user of the account; she did not make an in-court identification of D.J. as the person in the social media image; and, she did not testify regarding the relevance or connection between the social media image and the armed robbery that occurred on November 29, 2022.

Based upon my review of the testimony and evidence introduced in support of the charge of armed robbery, I find the State failed to negate any reasonable probability of misidentification in order to support a finding beyond a reasonable doubt that D.J. is one of the persons who perpetrated the alleged offense on November 29, 2022.  The State presented no evidence or testimony identifying

---

[3] D.J. also raises an assignment of error regarding the erroneous admission of this exhibit for lack of proper foundation and authentication.  I find merit in D.J.'s argument.

In *State v. Groves, supra*, this Court discussed the proper foundation for authentication of social media posts.  As in this case, the evidence at issue was retrieved from social media accounts, and included screen shot images.  FBI Agent Bender testified that she collected the social media evidence at issue and she participated in the investigation of the subject shootings.  Agent Bender testified to her training as an undercover online employee, her methods for investigating social media accounts and obtaining that evidence.  This Court noted, "Agt. Bender provided significant information about the social media evidence.  Namely, she identified the videos and still shots from the videos; Defendants as the people in the videos; the dates of the videos; and her method of obtaining the videos."  *Groves*, 20-0450, pp. 31-32, 323 So.3d at 977.

In this case, the State offered only the testimony of Det. McKay, who testified that she obtained the social media image from other detectives.  Det. McKay provided no testimony as to the method for obtaining the social media post or connecting the account with D.J.  Consequently, I find that the State failed to lay a proper foundation to authenticate this evidence and the trial court abused its discretion in overruling the defense's objection and admitting it into evidence.  Nevertheless, in a review for sufficiency, the appellate court reviews all admissible and inadmissible evidence erroneously admitted.  *State v. Falkins*, 12-1654, p. 8, (La. App. 4 Cir. 7/23/14), 146 So.3d 838, 845.

4

D.J. as one of the persons in the video. The State argues, and the majority agrees, that the person wearing a "distinctive face mask" in the video is the same person pictured in the social media image, who was identified by "resource detectives" as D.J. The majority concludes that this is sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that D.J. is the perpetrator of the armed robbery. I completely disagree.

I have viewed both the video surveillance footage and the social media image. The video surveillance footage is taken at such a distance that I find the facemask or any identifying features of the perpetrator, alleged to be D.J., are not clearly identifiable. The social media image, seemingly taken at night and backlit by an overhead light, shows an individual wearing a patterned mask, whose facial features or other identifying features are not visible. I note that Det. McKay did not testify to being personally familiar with D.J., and, as stated previously, she provided no testimony that the victim, any witness, or herself identified D.J. as the person in the video or in the social media image. Det. McKay stated that "resource detectives" identified D.J. as the person whose social media account was used to post the image, but, there was no testimony or evidence presented that D.J. is the person in the social media image. Moreover, other than the "distinctive face mask", Det. McKay offered no testimony connecting the person pictured in the social media image to the person who appears in the video surveillance footage for approximately 2 seconds. Therefore, I find the testimony and evidence presented at trial completely insufficient to convince a rational trier of fact beyond a reasonable doubt that D.J. was the perpetrator of the armed robbery.

**Insufficient Evidence for Unauthorized Use of a Motor Vehicle**

The offense of unauthorized use of a motor vehicle is defined as, "the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently." La. R.S. 14:68.4(A). Louisiana jurisprudence construes the statutory definition of unauthorized use of a motor vehicle to require a showing of *mens rea* or criminal intent, which can be satisfied by showing that the person knowingly used the vehicle without the consent of the owner. *State in Interest of J.K.*, 22-0308, pp. 13-14 (La. App. 4 Cir. 7/13/22), 344 So.3d 674, 684 (citing *State in Interest of C.T.*, 16-0939, p. 3, n. 3 (La. 10/18/17), 236 So.3d 1210, 1212).

In support of the allegation of unauthorized use of a motor vehicle, the State presented only the testimony of Det. Augustine. Det. Augustine testified that she became involved in the investigation of an "armed carjacking" that occurred on November 29, 2022, when she and her partners "spotted the vehicle" on November 30, 2022. Although Det. Augustine testified that the Infinity was the vehicle stolen on the previous day, her testimony did not establish the known ownership of that vehicle. The State produced no evidence or testimony establishing the ownership of the vehicle at issue. In addition, on cross-examination, Det. Augustine clearly stated that she did not see D.J. inside the vehicle, did not observe the vehicle as it was being parked, and did not see D.J. exit the vehicle. The State produced no testimony or evidence that D.J. was inside that vehicle at any time. Although Det. Augustine testified that she was present when another officer activated a key fob

that unlocked the Infinity, Det. Augustine did not testify to observing the key fob being recovered from D.J.

Based on the testimony presented, I find the State failed to prove that D.J. used the motor vehicle at issue and that D.J. knowingly used the motor vehicle without the consent of the owner. Consequently, I find insufficient evidence for any reasonable trier of fact to find beyond a reasonable doubt that D.J. committed the offense of unauthorized use of a motor vehicle.

**Insufficient Evidence for Illegal Possession of a Firearm by a Juvenile**

An adjudication for illegal possession of a firearm by a juvenile requires a finding that the juvenile had actual, not merely constructive, possession of a gun. *State in Interest of R.P.*, 14-0468, p. 4 (La. App. 4 Cir. 9/10/14), 150 So.3d 76, 79 (quoting *State in Interest of R.D.*, 12-0619, p. 4 (La. App. 4 Cir. 10/3/12), 126 So.3d 504, 506); *see* La. R.S. 14:95.8 ("[i]t is unlawful for any person who has not attained the age of seventeen years knowingly to possess any handgun on his person.").

In support of the charge, the State presented the testimony of Det. Augustine, who clearly stated that she was not present when other officers recovered the handgun. Det. Augustine testified that other officers went inside the barbershop and emerged with a firearm that they handed to her to secure in evidence. Det. Augustine affirmed in her testimony that she learned from other officers that the gun was recovered from behind a dresser in the barbershop and was not taken from D.J.'s person.

I find Det. Augustine's testimony insufficient to establish the essential elements of the offense, because she could not testify that D.J. had actual

possession of the firearm. Moreover, according to her testimony, no officer could provide testimony that D.J. was in actual possession of the firearm. Det. Augustine specifically stated under cross-examination that other officers told her the firearm was located from behind the dresser inside the barbershop and was not recovered off of D.J.'s person. Consequently, I find insufficient evidence to sustain the adjudication of illegal possession of a firearm by a juvenile. Moreover, I find the majority's affirmation of this adjudication directly conflicts with the jurisprudence of this Court, holding that La. R.S. 14:95.8(A) requires actual possession rather than constructive possession. *State in the Interest of R.D.*, 12-0619, p. 4 (La. App. 4 Cir. 10/3/12), 126 So.3d 504, 506; *State in the Interest of T.M.* 11-1238, p. 9 (La. App. 4 Cir. 3/28/12), 88 So.3d 1228, 1235, *writ granted on other grounds*, 12-0964 (La. 12/14/12).

After review of all evidence presented at this adjudication, viewing the evidence in the light most favorable to the prosecution, I do not find that any rational trier of fact could have found the State proved the essential elements of the three charged offenses beyond a reasonable doubt. Based on review of the law and facts, as required in our review of a juvenile delinquency adjudication, I find the juvenile court was manifestly erroneous in adjudicating D.J. delinquent for the charged offenses. Therefore, I would reverse D.J.'s adjudications and disposition.

8